The Attorney General v. Benjamin Soule and others.

*Equity pleading and practice: Gifts to charity: Parties: State interference.* The state is not authorized, through its law officer, to bring a suit in equity, adverse to all private parties and interests, to enforce a gift by will to charitable uses, unless the gift be definitely to a charity such as equity recognizes, and definitely to a public charity.

The state, no less than other prosecutors, must appear on the face of the record to be entitled to prosecute, or the proceeding must fail in consequence of the irrelation of the plaintiff to the subject of the action.

*Will construed: Charitable uses: Public interest.* The will in question in this case directs the setting apart of ten thousand dollars to be expended according to the directions of the executors, "for the establishment of a school at Montrose for the education of children;" and this is held to be so uncertain and indefinite as not to bind the trustees to an application of the fund to public charity, or even, perhaps, to charity at all, as recognized in courts of equity, but to clothe them with a discretion broad enough to permit of their applying the fund to a private school, and perhaps even to one not within the class of charities; and therefore no case is presented for state interference.

*Costs.* The taxable costs of both courts in this case are awarded to the defendants, against the state.

*Heard July 24. Decided October 14.*

Appeal in Chancery from Ionia Circuit.

*Byron D. Ball, Attorney General,* and *Hughes, O'Brien & Smiley,* for the complainant.

*Bell & Hutchinson* and *W. W. Mitchel,* for defendants.

GRAVES, J.

This case comes up by appeal from a decree dismissing an information which was filed by the attorney general by direction of the governor.

The information was based upon paragraphs in the 4th and 8th clauses of the last will of the late Ambrose L. Soule. The 8th clause is as follows: "*Eighth,* I do further order and direct my said executors to set apart a sum not exceeding ten thousand dollars, to be derived from the sale of my real and personal estate sold, and that may remain unsold, or otherwise, after having first provided for or paid

28 MICH.—20.

over to each one of my said children the sum of five thousand dollars, as hereinafter directed; and after paying and providing for all the other orders, directions and bequests of this will, *for the establishment of a school at Montrose aforesaid, for the education of children, to be expended according to the direction of my said executors.*"

The passage referred to in the 4th clause is found among the enumeration of charges upon a particular residue of the estate, and it merely mentions the sum for "establishing a school for the education of children," as directed in the eighth clause.

The events contemplated by the will as precedent to the. establishment of the school having apparently occurred, and the executors forbearing or declining as yet to take upon themselves the special trust connected with the bequest in question, this suit was instituted and has been prosecuted to compel them to assume the trust, and devise and execute a plan for the establishment of the school, or, by way of alternative, to cast upon the court the duty to maintain and carry out the trust, and according to the doctrine of approximate execution, if that should be found necessary.

The discussion at the hearing took a wide range, and the general subject of equity jurisdiction in charity cases, and especially the influence of the statute of charitable uses, of the 43d Eliz., on that jurisdiction. received considerable attention.

For the informant it was strenuously contended that the bequest of Mr. Soule was to charity, and was one which was subject to be enforced and carried out at the suit of the attorney general in the circuit court in chancery.  This general position was earnestly controverted by the defendants, on several grounds.

The opinion which has been formed of the case renders it quite unnecessary to attempt to trace the growth, modifications or extent of equity jurisdiction over gifts to charity, or to inquire how far kingly prerogative may be

said to have become connected or intermingled with the strictly judicial authority relating to charities. It is eminently necessary that we do not ignore the precise attitude of the case actually presented. The cause before us is not one in which trustees are seeking the advice or assistance of the court, nor one in which heirs are endeavoring to test the validity or extent of a gift asserted against them as one to charity. The controversy is not one between private parties for the determination of private rights. The suit is not in the interest of the heirs or of the executors, but is a purely adverse proceeding by the state, through the attorney general.

Now, the state, no less than other prosecutors, must appear on the face of the record to be entitled to prosecute, and whenever this does not appear, the proceeding must fail in consequence of the irrelation of the plaintiff to the subject of the action.

The fundamental ground on which the state is permitted to sue in these cases is, that there has arisen a public right, and of a nature which makes it the duty of the state, through its law officer, to take action for its maintenance and enforcement. And the proceeding before us necessarily assumes the existence of a public right capable of being asserted and carried out in the court of chancery, in a suit by the attorney general, wholly adverse to all private parties and all private interests.

The counsel for the state were understood as specially contending that the gift to establish a school was a gift for a charitable purpose which inured as a public right, subject to be protected and coerced by public authority.

Was this bequest of Mr. Soule of such a character as to warrant this assumption, and authorize this public intervention?

Unless the gift was definitely to a charity such as equity recognizes, and one more or less public or general, there is no right in the public to serve as a ground for intervention in this way by the law officer of the state.

The case of *The Attorney General on relation of the Inhabitants of Clapham v. Hewer*, decided in 1700 and reported in *2 Vernon, 387*, will tend to illustrate this point. There a school house had been erected by voluntary contribution of the inhabitants, on the waste of the lord of the manor, Mr. Atkins, who gave the site to a number of the inhabitants, and their heirs in trust, and to the intent that the inhabitants of Clapham might forever have a school as the gift of Richard Atkins. Upon a dispute between the inhabitants and the surviving trustees as to which should nominate the school-master, the attorney general proceeded by information. The lord keeper said: "This not being a free school, is not a charity within the provisions of the statute of Queen Elizabeth, and consequently the inhabitants have not a right to sue in the name of the attorney general. If the lord of a manor should erect a mill and convey it to trustees to the intent the inhabitants might have the convenience of grinding there, the inhabitants should not be admitted to sue here in Mr. Attorney General's name."

As already intimated, it is essential that it should appear that the gift was definitely to charity, and definitely to public charity.

When the property or fund is so given that it may or may not be used for charity, or may or may not be used for a charitable object of a public character, without violating the directions of the will, the case is not one for enforcing the gift as a charity, in a suit by the attorney general for the public.

"The question is not," says Sir William Grant, in *Morice v. Bishop of Durham, 9 Ves., 399*, "whether the trustee *may* not apply it upon purposes wholly charitable, but whether he is *bound* so to apply it." And in *James v. Allen, 3 Mer., 17*, he says further: "If the property might, consistently with the will, be applied to other than strictly charitable purposes, the trust is too indefinite for the court to execute."—See also *Ellis v. Selby, 1 Myl. & C., 286*.

If the ambiguity involves the quality of the charity as public or private, the same reasons and principles must apply, where the right to maintain the suit depends upon its being public, and if the fund may consistently with the will be applied to a purpose not public, the attorney general cannot interpose to compel a public application.

Recurring to the terms of Mr. Soule's will, it will be noticed that he directs the setting apart of ten thousand dollars to be expended according to the directions of his executors for the establishment of a school at Montrose for the education of children. The word, "establish," in the connection in which it is used, is quite indefinite. It is susceptible of various senses. The testator may have used it to denote the employment of a teacher or teachers, or the organization of an institution, or the erection of a building, or part or all of them.—*Attorney General v. Hull, 15 E. L. & Eq., 182.* But whatever plan, if any, was in the testator's mind, it is plain that he did not explain it in his will, nor did he bind his executors to any specific scheme. He did not indicate the character of the school, as to the matter to be taught, the system of instruction, the description of the pupils, the number to be admitted, or the qualification, or number of instructors. The will is wholly silent as to how the school should be maintained, and as to whether it should be public or private. Perhaps an inference may be drawn from the expressions used, that the whole bequest was intended to be expended at once and for all, in *establishing* the school, and so leaving nothing as a fund to assist its continuance. And if such was the design, it was contemplated, most likely, that when established it should be self-sustaining, and not a free school.

We have, then, the gift of a sum of money to be expended by trustees according to their unlimited discretion, in establishing a school for children at a specified place, and we find no provision looking to the exercise of this discretion by the court, or anybody else. The executors

are not bound by the will to erect any particular kind of school. Consistently with the will they may in their discretion erect one of an exclusive character, and in no just sense public. And I see nothing in the words of the testator to preclude a school which, according to the authorities, could not be recognized as a charity at all.—*Duke Char. Us., 128.*

On the whole, it appears to me that Mr. Soule's bequest is uncertain and indefinite in two ways. In the first place, the bequest is so constructed as not to bind the trustees to an application of the fund to public charity, or perhaps even to charity at all, as recognized in courts of equity. On the contrary, they appear to be vested with a discretion broad enough to permit them to apply the fund to a private school, and, perhaps, to a school not within the class of charities. In the second place, if it were found to be for a public charitable object, the gift would still be wholly uncertain and indefinite, in plan and detail, and in terms completely dependent upon the discretion of the executors for the contrivance and development of the end aimed at. How the second ground of difficulty might serve to affect the action of the court, if the first was not in the way, I do not pause to consider.

The first appears to me to present insuperable objections to this proceeding by the state, and to afford sufficient reasons for affirming the decree of the court below. I am also of opinion that the state ought to pay the taxable costs of the defendants in both courts.—*Comp. L.,* § *7407.*

The other Justices concurred.