WANSTEAD v. FISHER.

1. WILLS—CONSTRUCTION—INTENT.
   The cardinal principle in the interpretation of wills is to carry out the intention of the testator, if it is lawful and discernible.

2. SAME—WHOLE WILL CONSTRUED TOGETHER.
   In construing a will, the whole will is to be taken together and effect given to the whole, if that be possible.

3. SAME—AMBIGUITY.
   If the intention of the testator is obscure, and the language ambiguous, resort must be had to the well understood rules applicable to the construction of wills for the purpose of arriving at the ultimate object of the inquiry, viz., the intention of the testator and the solution of the question of what was his will.

4. SAME—AMBIGUITY—EXTRANEOUS EVIDENCE.
   In case provisions of a will are doubtful or may admit of more than one interpretation, the court, in order to be enlightened, will put itself in the situation of the testator in reference to the property, relations subsisting between testator and his family and the circumstances surrounding him.

5. SAME—TRUSTS FOR RELIGIOUS, EDUCATIONAL, CHARITABLE OR BENEVOLENT USES.
   If the subject matter of a will is a gift, grant, bequest or devise, in trust or otherwise, for religious, educational, charitable or benevolent uses, the court must consider the language of statutes providing that such gift shall not be invalid by reason of indefiniteness or uncertainty of the object of the trust or beneficiaries or failure to designate a trustee and vesting court of chancery with jurisdiction to enforce same (3 Comp. Laws 1929, §§ 13512, 13513).

6. SAME—DEVISE FOR EDUCATIONAL PURPOSES.
   Testamentary devise of lands and personalty for educational. purposes is to be construed liberally to the end that the intention of the testatrix may be fully complied with, if possible.

7. TRUSTS—CHARITIES—OBJECT—BENEFICIARIES—TRUSTEE—ENFORCE-MENT.

A trust for educational purposes by way of devise to the scholarship fund of an unincorporated society of which testatrix, a teacher, had been an interested member and which was administered pursuant to rules and regulations theretofore adopted for aiding graduates of a certain high school in obtaining further education and which devise named a trustee *held*, a valid charitable trust, the purpose of which was clearly indicated and enforceable in a court of chancery (3 Comp. Laws 1929, §§ 13512, 13513).

8. APPEAL AND ERROR — QUESTIONS REVIEWABLE — CONSTITUTIONAL QUESTIONS.

Question of constitutionality of a statute, not raised or passed upon in the court below is not considered on appeal (3 Comp. Laws 1929, §§ 13512, 13513).

Appeal from Iron; Bell (Frank A.), J. Submitted October 9, 1936. (Docket No. 68, Calendar No. 39,146.) Decided December 8, 1936.

Bill by Lovester J. Wanstead and others by their attorney in fact, Celia Sullivan, against Frank H. Fisher, administrator of the estate of Beulah Robinson, deceased, and another for the construction of a will and other relief. From decree rendered, plaintiffs appeal. Affirmed.

*C. D. Dwyer* (*John R. Monaghan*, of counsel), for plaintiffs.

*F. Floyd Symmonds*, for defendants.

SHARPE, J. This is an appeal from the circuit court in chancery to interpret the following provision of the last will and testament of Beulah Robinson, deceased:

"To the Beulah Robinson Scholarship Fund:
(1)  The residue of the home in which I live;
(2)  All income accruing from the Robinson Lake Property—640 acres, sec. 27–46–37;

(3)   N. W. ¼ of N. W. ¼, sec. 4–43–35;

(4)   Lots on Minckler Hill, Sipchen addition;

(5)   Lot 2, sec. 16–46–35;

(6)   Sec. 12, N. W. ¼ of S. E. ¼, 46–36 and N. E. ¼ of S. E. ¼ of same section;

(7)   Sec. 21, N. ½ of S. ½, 46–36;

(8)   The undivided 1/6 of W. ½ of N. W. ¼, sec. 25–46–36;

(9)   S. E. ¼ of N. E. ¼, sec. 31–45–34;

(10)   N. E. ¼ of N. W. ¼ of sec. 17–44–34;

(11)   Lot 2 of sec. 17–44–34;

(12)   All stocks and bonds and other residue not otherwise mentioned;

(13)   E. ½ of N. E. ¼ of N. E. ¼ and E. ½ of S. E. ¼ of N. E. ¼, sec. 27–46–37;

(14)   The Nette River property;

(15)   Balance due from the Fred Peters insurance.

"The above stated property shall be handled and disposed of as he sees fit by Frank H. Fisher of Iron River, Michigan.

"I especially request that Abbie Boyington be given the chairmanship of the scholarship fund."

Plaintiffs, as heirs at law of deceased, filed a bill of complaint praying for a construction of the above provision and for a judgment determining the legal effect of said provision and contend among other things that the paragraph in question purports to be a general bequest and devise to the Beulah Robinson Scholarship Fund which has no legal capacity to take.

The record discloses that testatrix had been a teacher in the public schools for many years prior to the time the will was drawn; that she was much interested in better education for the young; that for some years before the will was made she was a member of an unincorporated society or association known as the Twentieth Century Club; that at vari-

ous meetings of the club she discussed with other members the raising of money to be loaned to ambitious students who wished to pursue their studies beyond the high school but were financially unable to do so; that she induced the members to raise $500 toward establishing such a fund by offering to contribute a like amount for the purpose if they did so; that when the other ladies had raised the specified amount she gave $500 to it as she had promised; that she participated in various meetings when the funds were discussed, and the questions of making loans were considered; that she, with others, prepared and adopted rules and regulations for the handling of the money in the fund and agreed that it should be known as the Beulah Robinson Scholarship Fund; and that she was, in fact, the moving factor in the establishment of this fund.

The Twentieth Century Club of Iron River, Michigan, is an unincorporated organization which has been in continuous existence since the adoption of the rules and regulations of the Beulah Robinson Scholarship Fund. It holds regular meetings, has by-laws and regulations; and its officers are elected annually. One of its permanent committees is the scholarship committee which sponsored the organization and raising of funds for the Beulah Robinson Scholarship Fund. This fund is not incorporated, has no articles of association, nor any definite provisions to determine who may be members or officers, but has a chairman and an advisory committee. The "rules and regulations governing the administration of the Beulah Robinson Scholarship Fund" were adopted August 14, 1931, and are as follows:

"1. This fund shall be called the Beulah Robinson Scholarship Fund.

"2. The object of this fund shall be to make loans from it to boys and girls who wish to go on

beyond the high school and fit themselves for some gainful occupation, but who, without financial help, would not be able to do so.

"3.   To be eligible to secure a loan from this fund, girls and boys must be graduates from the Iron River High School; and said loans shall not be placed on a competitive basis. It is further recommended, that, in case a student is pursuing a four-year college course, loans may be made only during the junior and senior year. In very exceptional cases, at the discretion of the scholarship committee, loans may be made in the sophomore year.

"4.   To secure a loan, a student must be recommended as worthy and promising, by a committee of three members of the board of education, the superintendent of schools, the cashier of the bank that has the funds in charge. This committee shall act as an advisory committee to the scholarship committee.

"5.   It shall be the duty of the chairman of said scholarship committee to obtain a semi-annual report from the proper official of the institution in which the student is enrolled as to the character of the work being done by said student; and to answer all letters received from students.

"6.   Furthermore, it shall be the duty of each student having a loan to communicate with the chairman of the scholarship committee, at least once each semester, concerning course of study being pursued and progress in same.

"7.   One hundred dollars shall be the maximum loan to any one student at any one time; but a second loan of not more than $100 may be made when so decided by the scholarship committee.

"8.   A student may borrow on his or her own note signed by one of the parents, and indorsed by two responsible parties, without interest during the pursuance of his or her own course; money to be refunded as soon as possible after leaving the institution of learning, with interest at 3 per cent. after said date until paid."

It is elementary that the cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered; and that the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole.

In *Re Blodgett's Estate,* 197 Mich. 455, we said:

"If the intent of the testator is obscure, the language ambiguous, resort must be had to the well-understood rules applicable to the construction of wills for the purpose of arriving at the ultimate object of the inquiry, *viz.,* the intention of the testator, the solution of the question: What was his *will?"*

In *Sondheim* v. *Fechenbach,* 137 Mich. 384, this court quoted the following from Schouler on Wills (3d Ed.), § 467:

" 'In fine, where the meaning of the language of the will is plain, the court of construction does not go outside to discover what the testator intended; but where the provisions are doubtful, or may admit of more than one interpretation, the court will put itself in the situation of the testator, in reference to the property and the relative claims of the testator's family, the relations subsisting between him and them, and the circumstances which surrounded him, in order to be enlightened.' "

See, also, *Tuxbury* v. *French,* 41 Mich. 7; *Stender* v. *Stender,* 181 Mich. 648.

If the subject matter of the will is a gift, grant, bequest or devise, in trust or otherwise, for religious, educational, charitable or benevolent uses, the court must also be mindful of the language of 3 Comp. Laws 1929, §§ 13512, 13513, which reads as follows:

13512. "No gift, grant, bequest or devise, whether in trust or otherwise to religious, educational, char-

itable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no such trustee shall be named in said instrument or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

13513. "The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section one of this act. Every such trust shall be liberally construed by such court so that the intentions of the creator thereof shall be carried out whenever possible. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State."

A construction of the above sections was had in *Scudder* v. *Security Trust Co.*, 238 Mich. 318, where we said:

"This statute recognizes the fact that charitable trusts may not always be 'fully expressed and clearly defined' in the instrument creating them. Its purpose is to enable a court of chancery to enforce such indefinite trusts. It provides that they are not to be invalidated for that reason; that it is the duty of the court to give them a liberal construction, 'so that the intentions of the creator thereof shall be carried out whenever possible.' It provides that the prosecuting attorney shall represent the beneficiaries, 'in all cases where they are uncertain and indefinite,' and shall enforce them in a court of chancery. * * *

" 'The final test to be applied to the validity of a trust, challenged as violating the act, is whether the court of chancery could in the last analysis enforce the trust provisions.' "

See, also, *Greenman* v. *Phillips,* 241 Mich. 464.

The devise in the case at bar being for "educational purposes" is to be construed liberally to the end that the intention of the testatrix may be fully complied with, if possible. In *Scudder* v. *Security Trust Co.,* above, we held that such a trust is valid where it names a trustee capable of executing it, a definite charitable purpose, and a particular class from which the beneficiaries are to be selected.

In our opinion such a trust was created and Frank H. Fisher is the trustee. He had been Mrs. Robinson's friend and fellow worker and is given the power to handle and dispose of the property for the Beulah Robinson Scholarship Fund in accordance with the uses and purposes as set forth in the rules and regulations of the fund. Moreover, the object of the trust is to advance the cause of education and it was created solely for the purpose of aiding grad-

uates of the Iron River High School to further their education. We are of the opinion that it sufficiently appears that the testator established a charitable trust, the purpose of which was clearly indicated and enforceable in a court of chancery.

Appellants raise the question of the constitutionality of Act No. 280, Pub. Acts 1915 (3 Comp. Laws 1929, § 13512 *et seq.*), but inasmuch as this question was not raised or passed upon in the court below, we decline to pass upon it.

The decree of the trial court is affirmed. Defendants may recover costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and TOY, JJ., concurred. POTTER, J., did not sit.