## LOVE *v.* SULLIVAN.

1. CHARITIES—LIMITATIONS—PERPETUITIES—STATUTES.
   Charitable trusts, or uses, during statehood prior to 1907, were limited to those for the beneficial interests of any person or persons when such trust was fully expressed upon the face of the instrument creating it, and were then subject to a rule against perpetuities, the English statute of charitable uses having been repealed by the territorial legislature in 1810 so far as applicable in this territory (1 Terr Laws, p 900; PA 1907, No 122).

2. SAME—LIBERAL CONSTRUCTION OF TESTAMENTARY GRANTS—INTENT.
   Trusts for religious, educational, charitable and benevolent purposes are now regarded with favor, and testamentary grants for such purposes are to be construed liberally to the end that the intention of the testator may be carried out (CL 1948, § 554.351 *et seq.*).

3. WILLS—CONSTRUCTION—INTENT.
   The cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered and the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Charities § 17 *et seq.*
[2, 4, 8–10, 14] 15 Am Jur 2d, Charities § 105.
[3, 5] 57 Am Jur, Wills § 1133 *et seq.*
[6] 15 Am Jur 2d, Charities § 57 *et seq.*
[7] 15 Am Jur 2d, Charities § 131 *et seq.*
[11] 57 Am Jur, Wills § 1149.
[12] 15 Am Jur 2d, Charities § 98.
[13, 15] 15 Am Jur 2d, Charities §§ 103, 104.
[16] 15 Am Jur 2d, Charities § 6.
[17] 15 Am Jur 2d, Charities § 73.
[18, 19] 15 Am Jur 2d, Charities § 99 *et seq.*

4. Trusts—Charitable Trusts.

Public charitable trusts, being of necessity, indefinite and uncertain in respect to beneficiaries, are interpreted liberally, since the imposition of a requirement of certainty of object and too great a limitation upon the discretionary powers of trustees more often tends to defeat the dominant charitable purpose of the testator than to effectuate it.

5. Wills—Intent—Construction.

The intent of the testator, as specifically declared at the outset of the will, may not be permitted to be defeated by technical construction of a subsequent term, especially when such construction is not indicated.

6. Charities—Purpose of Trust—Harelip and Cleft Palate Defects.

Trust estate to be used "for assisting and helping those having harelip and cleft palate" congenital birth defects, held, to have properly defined a charitable purpose (CL 1948, § 554.351 et seq.).

7. Same—Construction of Testamentary Grants—Cy Pres.

Testamentary grants for charitable purposes will be construed by a court of equity so as to give them effect, if possible, and carry out the intention of the testator when clearly manifested, even to the extent of applying the cy pres doctrine.

8. Same—Construction of Testamentary Trusts.

A testamentary trust for charitable purposes will be construed to sustain validity by restricting application of the funds to use in a lawful manner, where the terms are broad enough to allow application of the fund either in a lawful or an unlawful manner.

9. Same—Ambiguities.

Ambiguities in a testamentary grant for charitable purposes will be resolved in favor of a charitable bequest and against a construction invalidating it.

10. Same—Construction of Conditions Affecting Testamentary Grant.

Conditions affecting a testamentary grant for charitable purposes are generally regarded as conditions subsequent rather than conditions precedent, so as not to affect the original validity of the grant.

11. WORDS AND PHRASES—ASSOCIATED WORDS.

The meaning of a word may be ascertained by reference to the meaning of words associated with it and in its general environment.

12. CHARITIES—CONSTRUCTION OF BEQUEST—EXERCISE OF POWER.

Testamentary bequest to trustee with authority to use principal and income in such a way as to him "shall seem best, under the direction and guidance of" testator's nonresident cousin "for assisting and helping those having harelip or cleft palate" *held,* not to have subjected trustee to control of the nonresident cousin, especially in view of further provision that "in any event, the judgment of said trustee shall be final and conclusive" and trustee's obligation to apply to court for instructions in case power to use funds is open to question.

13. SAME—VALIDITY OF BEQUEST—CONTROL OF USE OF FUNDS—TRUSTEE.

Fact that residuary provision of will made devise to trustee with power to use income and principal "when and as such trustee shall deem best, under the *guidance of*" testator's nonresident cousin "for assisting those having harelip or cleft palate," an affliction which had plagued testator, did not invalidate the testamentary bequest for such charitable bequest, especially in view of further provision relative to finality of trustee's judgment and his duty to use funds for purposes limited.

14. SAME—OBJECT OF TRUST—ASSUMPTION OF VALIDITY—INTENT.

A testator who creates a trust for a charitable purpose will be assumed to have intended to create a valid charitable trust in order to accomplish the purpose.

15. SAME—UNLIMITED DISCRETION—CONSTRUCTION.

Words reposing unlimited discretion in a trustee of a trust having a charitable purpose should be construed as being limited to suitable objects of charitable gifts, thus preserving the bequest and devoting it to the uses for which the testator intended it, rather than giving it to contentious next of kin.

16. SAME—PUBLIC NATURE.

A valid charitable trust must be public in nature.

17. SAME—PUBLIC PURPOSE—PRIVATE CORPORATION—INTENT.

Fact that a private corporation authorized to carry on research for the public benefit and that such corporation *could* be the recipient of funds from a testamentary trust for public charitable purposes and that such corporation had also other

objects which are selfish in purpose would not render the testamentary trust invalid, but the funds *must be used for a public purpose* and thereby effect the intent of the testator (CL 1948, § 554.351 *et seq.*).

18. Same — Harelip and Cleft Palate — Indirect Assistance Through Research.

Provision in residuary grant by testator who had been afflicted with a harelip and cleft palate, wherein trustee was authorized to use the income and principal of the trust to help those who wished to correct that particular speech defect and to give to any school, college or university as a gift or grant, if it "will either directly or *indirectly* carry out the purpose of this trust" was not invalid by reason of use of word *indirectly*, since the commonly accepted meaning of that word so used includes research, experimentation, and development of better and less expensive techniques in assisting those so afflicted.

19. Same—Harelip and Cleft Palate—Administration of Trust.

Research, devoted to developing new methods to help in the worthwhile charitable purpose of aiding those suffering from harelip and cleft palate is an *indirect* method to carry out the charitable purpose, hence, does not affect the trust's validity, especially in view of statute providing for the uniform administration of charitable trusts (CLS 1961, § 14.251 *et seq.*; CL 1948, § 554.351 *et seq.*).

Appeal from Calhoun; Magnotta (Alfonso A.), J., and McIntyre (Robert W.), J., presiding. Submitted Division 3 May 31, 1966, at Grand Rapids. (Docket No. 299.) Decided November 22, 1966. Rehearing denied January 12, 1967. Leave to appeal denied by Supreme Court March 28, 1967. See 379 Mich 757.

Bill of complaint by June Schoder Love against Ronald M. Ryan, executor of the estate of Raymond W. Schoder, for construction of will and determination of invalidity of certain parts. Wendell L. Schoder, administrator with will annexed, substituted as defendant. Judgment for defendant. Plaintiff appeals. James M. Sullivan substituted as administrator with will annexed, *de bonis non.* Affirmed.

*Roger H. Nielsen* and *Joseph W. McAuliffe,* for plaintiff.

*Sullivan, Hamilton & Ryan,* for defendant.

HOLBROOK, P. J.   Plaintiff's complaint was filed in the circuit court for the county of Calhoun, February 18, 1960, seeking interpretation of paragraph 17 of the will of Raymond W. Schoder.   Mr. Schoder was born with the affliction called "harelip and cleft palate."   Although he had some remedial work done, this affliction influenced his entire life. By his will, after leaving various bequests to many distant relatives, he gave the plaintiff, his closest relative and niece, $5,000 in cash, all his household goods, furniture, heirlooms, and so forth, and a life estate in his 3 properties in the city of Battle Creek and then bequeathed the remainder in said real estate to plaintiff's children.   Mr. Schoder then made provision for the disposition of the residue of his estate in the following manner:

"17.  All the rest, residue and remainder of my property and estate, both real and personal, and whatsoever kind and wheresoever situated, of which I shall die seized or possessed or of which I shall be entitled to dispose at the time of my death, I give, devise and bequeath to Ronald M. Ryan, attorney at law of Battle Creek, Michigan, IN TRUST NEVERTHELESS, to hold, manage, invest and reinvest the same, to collect the income and to use said income as well as any part or all of the principal when and as such trustee shall deem best, under the direction and guidance of my cousin Rev. Raymond V. Schoder, now residing at West Baden, Indiana, for assisting and helping those having harelip or cleft palate. It is my intention that said trustee shall have unfettered discretion in using the income and principal of said trust estate to help those who wish to correct

this particular speech defect, and to this extent the proceeds from said trust estate may be given to any school, college or university as a gift or grant, if such gift or grant will either directly or indirectly carry out the purpose of this trust, but in any event, the judgment of said trustee shall be final and conclusive."

The will was duly admitted to probate and plaintiff, in her complaint, claimed that the language employed by the testator in said paragraph 17 was insufficient to create a charitable trust and therefore was invalid under the statutes and laws of the State of Michigan. She further alleged that the testator died intestate as to the rest, residue, and remainder of his estate, and that she as sole heir of the deceased was entitled to be decreed the sole owner of the residue of said estate.

The case was tried without a jury before the circuit judge. The testimony produced at the trial showed that the affliction of harelip and cleft palate is one of not infrequent incidence in this country, occurring approximately once out of every 800 births; that it is one of the more serious problems in the field of birth defects. The proofs also showed that proper care and treatment and the use of prosthetic devices can greatly assist the afflicted to overcome the defect and to lead more or less normal lives. However, the treatment starts within weeks after birth, continues for 15 to 17 years and requires the services of a team consisting of 12 to 15 professional members, each operating within his own speciality and the cost to treat an ordinary case is from $5,000 to $15,000. Many of the afflicted sufferers have not the means to pay for the necessary care and treatment. There is a shortage of professional specialists who treat patients suffering from the afflictions. Teams of professional specialists donate their time and advice to help harelip and cleft palate

victims in our State, at treatment centers located in Detroit, Ann Arbor, Grand Rapids, and Saginaw. Even with these specialists donating their time and professional skills the cost of treatment for surgery, dental work, special therapy, and oftentimes psychiatric help is great and beyond the means of most of those in need. The proofs also showed that the care and treatment for harelip and cleft palate victims is one of the important types of cases helped by the Michigan Crippled Childrens Association, which is in need of funds to extend their services to many needy children not able to be served at the present time.

The Honorable Alfonso A. Magnotta, presiding circuit judge in a very thorough opinion filed January 17, 1963, determined that paragraph 17 of the will created a trust for charitable purposes and that under the provisions of the applicable statute constituted a valid charitable trust and ordered the plaintiff's complaint dismissed. Judgment of dismissal was filed February 1, 1963. February 18, 1963, plaintiff filed a motion for a new trial. Because the original defendant had been appointed to fill the vacancy created by Judge Magnotta's untimely death, both judges of the circuit disqualified themselves and the Honorable Robert W. McIntyre was assigned to hear the motion. This hearing was held April 10, 1964. By an order dated and filed August 15, 1963, counsel for both parties stipulated to the court that a gift for the benefit of sufferers from harelip and cleft palate would be a charitable use, unmodified by any other condition.

Judge McIntyre in his ruling denying the motion for new trial stated in part as follows:

"Plaintiff also relies heavily on the case of *Attorney General* v. *Soule,* 28 Mich 153. In that case, the testator provided for the establishment of a

school for the education of children to be expended
according to the direction of the executors. In
defeating this trust, Justice GRAVES said:

" 'And I see nothing in the words of the testator
to preclude a school which, according to the authorities, could not be recognized as a charity at all.'

"The court in *Attorney General* v. *Soule* pointed
out that the testator did not describe with any accuracy whatsoever the nature of the school which
was intended, whether it was to be public or private,
the number of pupils, the purposes of the education,
and in effect disclosed no intention on the part of
the testator to create a charitable use. Moreover,
this case was decided long before the passage of
PA 1915, No 280,[1] specifically requiring our present
liberal construction.

"This court finds that the words of the testator
in the current case do *not* express an intent to any
degree that his property be devoted to private use.

"The well-springs of this trust are to be found in
the pleadings themselves; in the complaint filed,
the plaintiff alleges in par. 9 that the deceased lived
a miserly existence; that he had a harelip and cleft
palate which caused him to exist and live in relative
isolation; that he had a sense of inferiority and
affliction; and that he was possessed of many idiosyncrasies, and lived an abnormal life. It is therefore most logical to find that the testator suffering
so bitterly from a cruel affliction would seek to spare
this pain and humiliation in his fellow man. The
late Judge Magnotta who heard all of the testimony
in this cause found that the intent of the testator
was clearly expressed. That his intention was contained in the following words: 'Assisting and helping those having harelips and cleft palates.' And
'to help those who wish to correct this particular
speech defect, and to this extent the proceeds from
said trust estate may be given to any school, college

---

[1] See CL 1948, § 554.351 *et seq.* (Stat Ann 1953 Rev § 26.1191 *et seq.*).—REPORTER.

or university as a gift or grant, if such gift or grant will either directly or indirectly carry out the purpose of this trust.' It is true the testator gave his trustee, 'unfettered discretion,' and that he said, 'the judgment of said trustee shall be final and conclusive,' however it is clear to this court that considering paragraph 17, of the will in question, it was the intention of the testator that these words be modified by, and confined to, 'using the income and principal of said trust estate to help those who wish to correct this particular speech defect.' This court cannot find that the words, 'the proceeds from said trust estate may be given to any school, college or university as a gift or grant,' denotes an intention on the part of the testator that the gift be made to a profit-making institution, but rather is merely a suggestion how the broad purposes of the trust might be carried out.

"The great overriding and dominant character of paragraph 17 is to help those having harelip or cleft palate, and certainly not the establishment of schools, colleges, or universities. Paraphrasing the words of Judge Simons in *Chicago Bank of Commerce* v. *McPherson* (CA 6), 62 F2d 393, 'assisting and helping those having harelips or cleft palates' are dominant words, coloring and conditioning those which follow, and that an overriding charitable intent is disclosed.

"This court has no qualms as to possible misapplication of the funds of this trust. The traditional powers of the court of equity to supervise such matters have been so clearly established as to require no authority, particularly as respects its power to control the subsequent actions of the trustee, to ensure the funds are canalized so as to flow into charitable uses."

Plaintiff has appealed from the judgment entered February 1, 1963, and from the order denying a new trial entered July 6, 1964, and presents the following question for review by this Court. Do

the provisions of paragraph 17 of the will create a valid charitable trust? Plaintiff asserts that the answer to this question must be "no" for several reasons: (1) by the terms of the trust a non-fiduciary is placed in a position of control over the trustee, (2) the terms of the trust give "unfettered discretion" to the trustee so that the corpus of the estate can be given to any school, college or university, public or private and therefore, the trust created is a purely private trust and void because of the statute against perpetuities, (3) the Michigan charitable trust statute does not apply because the trust created is private in nature.

Previous history concerning the development of the law of charitable trusts in Michigan is proper. Our earliest cases on the subject held that the law of charitable trusts, or uses, did not exist in this State. In the case of *Methodist Church of Newark v. Clark* (1879), 41 Mich 730, the court considered the giving of a gift of land to the trustees of the Methodist Church of Newark for the purpose of building a church thereon for the use of the members of the Methodist Episcopal Church, and providing that the property shall forever thereafter be used for the purpose of preaching the gospel by ministers of the Methodist Church. The court held the gift to be invalid. Mr. Justice COOLEY stated on page 741 as follows:

"If the law of charitable uses were in force in this State, the trust might be upheld under its rules. But that law is generally referred to as the statute of Elizabeth commonly called the statute of charitable uses, which with other English statutes was repealed in Michigan in 1810. 1 Terr Laws, p 900. There is no evidence that any pre-existing law on that subject has ever been recognized in this State. The Revised Statutes which took effect March 1, 1847, expressly abolished uses and trusts, except as

authorized and modified therein, and no distinction is made in the statute between charitable uses and any others. The same requisites are therefore essential to their validity."

The statute mentioned by the court, concerning trusts, contained the requirement that trusts would be valid when created for the beneficial interests of any person or persons when such trust is fully expressed upon the face of the instrument creating it. There was also in effect in Michigan a rule against perpetuities and trusts were required to conform to that rule.

Following the decision in *Clark, supra,* there was a line of cases, each holding that trusts for a charitable purpose wherein the beneficiaries were indefinite and uncertain, were invalid. In the case of *Hopkins* v. *Crossley* (1903), 132 Mich 612, our Supreme Court considered a trust consisting of personal property or funds. It was argued in that case that the earlier decision regarding charitable trusts applied only to real property and did not apply to personal property. The court, however, rejected this contention and held the trust invalid following the decision of *Clark, supra.* Following this decision the legislature in 1907 adopted the first act[2] permitting the establishment of charitable trusts in Michigan, viz:

"Sec. 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant,

2 PA 1907, No 122.

bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no trustee shall be named in said instrument, or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

"Sec. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section 1 of this act. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State."

Thereafter in the case of *Moore* v. *O'Leary* (1914), 180 Mich 261, the court held invalid a trust set forth in the will of Alice O'Leary which provided as follows:

"All property * * * to Mary E. Clary, to be disposed of by her as I have heretofore instructed her for charitable purposes and a bequest to St. Stephen's church of Port Huron, Michigan, towards the purchase of an organ."

Following this decision the legislature by PA 1915, No 280 repealed the 1907 act. Section 2 of the 1915 law re-enacted section 2 of the earlier act with the addition of the following sentence: "Every such trust shall be liberally construed by

such court so that the intentions of the creator thereof shall be carried out whenever possible."

After the 1915 statute was enacted various charitable trusts were upheld. *Scudder* v. *Security Trust Co.* (1927), 238 Mich 318; *Greenman* v. *Phillips* (1928), 241 Mich 464; *Bruce* v. *Henry Ford Hospital* (1931), 254 Mich 394; *Wanstead* v. *Fisher* (1936), 278 Mich 68; *Floyd* v. *Smith* (1942), 303 Mich 137.

Our Supreme Court in *Cleveland* v. *Second National Bank & Trust Company* (1958), 354 Mich 202, dealt with the validity of a charitable trust wherein the objections raised were similar to those presented by plaintiff in the case at hand. Therein the testator created in the tenth paragraph of his will a trust for the promotion of "charitable and educational purposes." He directed that 1/3 of the capital stock in C. K. Eddy & Sons should pass to the trustees named by him, from which property there should be created the C. K. Eddy Family Memorial Fund. Mr. Eddy's reasons for creating such trust were set forth in the will as was his desire that the people of Saginaw might be permanently benefited thereby. The terms of the administration of the trust estate as contained in the will are set forth on pp 205, 206, and 207 of said case and are as follows:

" '(a) To the payment of all necessary expenses. * * *

" '(b) Not exceeding 50% of the net income received from said trust estate shall be used by the trustees as donations from time to time to the Saginaw Welfare League, and to any of the charitable and social welfare institutions or movements, including any organized health programs of the city of Saginaw, or the county of Saginaw, Michigan. I hereby authorize the trustees to use their own discretion as to which particular charitable or social welfare institutions or movements of the city of Saginaw or Saginaw county shall be benefited by

such donations, it being my desire that the trustees shall be free to use their own judgment in such matters and to make donations from time to time in such amounts and to such particular causes as in their judgment are most worthy and entitled to financial support. * * *

" '(c) Not exceeding 30% per year of the net income received from said trust estate shall be used by the trustees to maintain or assist in the maintenance of a good uniformed band for the city of Saginaw. * * *

" '(d) Not exceeding 20% of the net income received from said trust estate shall be used by the trustees for educational purposes by financing in full or in part deserving boys or girls, and men and women from 15 to 30 years of age, residents of Saginaw county, Michigan, in their endeavors to continue their education in any of the public schools.' "

Mr. Justice Carr writing the opinion stated in part on pp 207, 208, 212, 214–218 as follows:

"It will be noted that subdivision (b) of paragraph 10 refers to 'charitable and social welfare institutions' and also to 'charitable and social welfare purposes.' Such institutions are also referred to in the disjunctive. Emphasizing these provisions, plaintiff brought the instant suit in circuit court attacking the validity of the trust on the ground that the directions of the testator authorized the use of income from the trust for purposes not necessarily charitable or educational. It is argued that 'social welfare' may be construed as including many things that may be conducive to the economic advantage of the people of the community in general, but which are not essentially of a public charitable nature. It is further contended that if subdivision (b) is invalid for the reason indicated the entire trust must fall due to the fact that the carrying out of the purposes of said subdivision are an essential part of the plan to the testator.

"The public policy of the State of Michigan as expressed in legislative enactments and interpreted in decisions of this Court regards with favor trusts for religious, educational, charitable and benevolent purposes. Counsel in the instant case have emphasized the provisions of PA 1915, No 280 (CL 1948, § 554.351 *et seq.* [Stat Ann 1953 Rev § 26.1191 *et seq.*]). Said act was substantially a re-enactment of PA 1907, No 122, the sufficiency of the title of which was in question in *Loomis* v. *Mack* (1915), 183 Mich 674, the act being sustained by an evenly divided Court. It may be noted that PA 1925, No 373 (CL 1948, § 554.381 *et seq.* [Stat Ann 1953 Rev § 26.1201 *et seq.*]), with reference to gifts, grants, devises and bequests, in trust or otherwise, for public welfare purposes, was apparently intended to classify gifts or grants for the benefit of the public welfare as analogous to such transfers for religious, educational, charitable and benevolent purposes. * * *

"Counsel for appellant also calls attention to *Wanstead* v. *Fisher* (1936), 278 Mich 68, in which *Scudder* v. *Security Trust Co.* (1927), 238 Mich 318 was cited. The comment above with reference to said case is equally applicable under the facts in *Wanstead* v. *Fisher*. It may be noted further that the Court recognized that the trust, being one for educational purposes, was to be construed liberally to the end that the intention of the testatrix might be carried out. It was also recognized (p 73) that:

" 'It is elementary that the cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered; and that the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole.' * * *

"Of like import is 14 CJS, Charities, § 12, p 439 *et seq.* * * *

" 'The State of Michigan, after following a settled policy for nearly a century in denying validity to charitable trusts, completely reversed that policy,

and upon each occasion broadened the scope of its legislation, until it is now the settled policy of the State expressly declared in its law to interpret them liberally. Zollman, American Law of Charities, § 61. Charitable trusts are of necessity indefinite and uncertain in respect to beneficiaries, and the modern view is that certainty of objects and too great a limitation upon the discretionary powers of trustees more often tends to defeat the dominant charitable purpose of the testator than to effectuate it. Objects of private beneficence in one generation may no longer require a testator's bounty in the next, and classes of beneficiaries in normal times tend to disappear. Michigan has adopted an enlightened, forward looking view. It ought not lightly to be ignored in the face of the express declaration of its legislature and the decisions of its courts.'

"In *Commissioner of Internal Revenue* v. *Upjohn's Estate,* 124 F2d 73, the circuit court of appeals of the sixth circuit, in construing as exempt from taxation under the Federal income tax law a testamentary bequest to trustees 'for such civic, charitable, educational or religious purposes, and for such purposes of general and public welfare as in their discretion may seem desirable, or as in their opinion would be approved by me if I were then present,' said (p 77):

" 'It is axiomatic, as a principle of construction, that words in a statute, or a written instrument, are not to be measured separately but each term is to be construed in its association with other terms and in its general environment.' * * *

"The reference to 'charitable and social welfare purposes' further suggests that in the mind of the testator such purposes were identical, alike referring to activities designed to benefit the people of Saginaw county generally through the extension of aid and assistance constituting charity in the legal sense of the term. The intent of the testator as specifically declared at the outset may not be permitted to be defeated by technical construction of

a subsequent term, especially when such construction is not indicated. In accordance with rules of interpretation applicable to instruments creating trusts for the purposes specified in the statute, above quoted, we conclude that the tenth paragraph of the will creates a trust for charitable and educational purposes, and that under the provisions of the statute it is valid."

As stated above, counsel for plaintiff has stipulated that the avowed purpose of the testator in setting up the trust, *i.e.,* "aid to harelip and cleft palate sufferers," is a charitable purpose. Without such stipulation we conclude, as did both of the learned trial judges, that the testator in providing the trust estate to be used "for assisting and helping those having harelip and cleft palate," congenital birth defects, properly defined a charitable purpose.

Under *Cleveland* v. *Second National Bank, supra,* the public policy of our State favors trusts for religious, educational, charitable, and benevolent purposes. Justice CARR in his opinion quoted with approval 10 Am Jur, Charities § 52, pp 621, 622; 14 CJS, Charities § 12, p 439 *et seq.;* and other authorities.

In its most recent publication, 15 Am Jur 2d, Charities § 105, "General Principles of Construction" we find stated:

"Gifts or trusts for charitable purposes are favorites of the law and the courts. That is, gifts or trusts, whether *inter vivos* or testamentary, for purposes which the law recognizes as charitable are regarded with special favor, once the charitable purpose becomes evident, and will not be declared void if they can, by any possibility consistent with law, be upheld; courts of equity, it is said, will go to the length of their judicial power to sustain such gifts. Provisions for such gifts are construed so as to give them effect, if possible, and to carry out

the general intention of the donor when clearly manifested, even if the particular form and manner pointed out by him cannot be followed. Where they cannot be followed literally, the courts usually apply the cy pres doctrine, as hereinafter particularly discussed. Under settled principles governing the construction of wills and other writings, the court has not only the right, but also the duty, to consider the instrument in its entirety and its various provisions in the light of context and the circumstances surrounding the donor, and, in the course of its search, can ordinarily discover some logical reason for sustaining a gift apparently intended for charity.

" 'If two modes of construction are fairly open, one of which would turn a gift into an illegal trust, while by following the other it would be valid and operative, the latter mode must be preferred. *When a charitable intent appears on the face of a will, but the terms are broad enough to allow application of the fund either in a lawful or an unlawful manner, its application will be restricted within the bounds of the law in order to sustain validity.* Similarly, ambiguities will be resolved in favor of a charitable bequest and against a construction which would invalidate it under the rule against perpetuities. If there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the words which will carry out the intention and objects of the testator. Where the gift is affected by conditions, they are generally regarded as conditions subsequent rather than conditions precedent, so as not to affect the original validity of the gift or trust.' " (Emphasis supplied.)

Plaintiff asserts for the first time in this Court the issue that the clause in the trust "and to use said income as well as any part or all of the principal when and as such trustee shall deem best, under the direction and guidance of my cousin Rev. Raymond V. Schoder, now residing at West Baden,

Indiana, for assisting and helping those having hare-lip and cleft palate" in effect places the trustee under the "control" of a person occupying a nonfiduciary capacity and voids the trust.

*Cleveland* v. *Second National Bank, supra,* unequivocally ruled that the meaning of a word may be ascertained by reference to the meaning of words associated with it and its general environment. Plaintiff claims the word "direct" means "control." We do not give it that broad meaning because in the same paragraph the testator stated: "but in any event, the judgment of said trustee shall be final and conclusive," indicating to this Court that Rev. Schoder was to "direct, point out possible ways to proceed, give advice, and guide" but not "control."

In any event, any action taken by Rev. Schoder in exercising whatever duty, privilege, or power given him by the terms of the will would have to be consistent with the purpose of the charitable trust. The trustee, in case of doubt, would have the privilege of applying to the court for proper direction. Authority supporting this principle of law is enunciated in 1 Restatement (Second), Trusts, § 185, p 395 as follows:

"If under the terms of the trust a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power, unless the attempted exercise of the power violates the terms of the trust or is a violation of a fiduciary duty to which such person is subject in the exercise of the power."

The comment under this rule states as follows:

"*a. In general.* The provisions of the trust instrument may give a person the power to control the action of the trustee in certain respects. This person may be a cotrustee, the settlor, a beneficiary,

or a third person otherwise unconnected with the trust. The relationship of the holder of the power is unimportant, except insofar as it may be a factor in determining the nature or extent of the power. See comment *e.* * * *

"*e. Duty of trustee where holder of power is subject to fiduciary obligations.* If the power is for the benefit of someone other than the holder of the power, the holder of the power is subject to a fiduciary duty in the exercise of the power. In such a case the trustee is under a duty similar to his duty with respect to the action of a cotrustee. See section 184. If the trustee has reason to suspect that the holder of a power is attempting to exercise it in violation of a fiduciary duty to which the holder is subject in the exercise of the power, the trustee is under a duty not to comply and may be liable if he does comply. If the holder of the power insists upon compliance notwithstanding the objection of the trustee, it is the duty of the trustee to apply to the court for instructions."

Plaintiff's first objection does not affect the validity of the charitable trust and therefore is untenable.

Plaintiff next asserts that the testator created merely a private trust because it authorizes the trustee to turn over the corpus of the estate to a private school or college organized for profit. Now it is true that the provisions of the will grant unto the trustee:

"It is my intention that said trustee shall have unfettered discretion in using the income and principal of said trust estate to help those who wish to correct this particular speech defect, and to this extent the proceeds from said trust estate may be given to any school, college or university as a gift or grant, if such gift or grant will either directly or indirectly carry out the purpose of this trust."

We construe the meaning of the words "school" and "college" by reference to the meaning of the words associated with them and in their general environment. The gift to a school or college is authorized only if it helps those who wish to correct this particular speech defect and further, only in the event such gift or grant will either directly or indirectly carry out the purpose of the trust.

In one of the headnotes in the case of *Cleveland v. Second National Bank, supra,* it is stated:

"The cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered and the whole will is to be taken together and is to be so construed as to give effect, if it be possible, to the whole."

We have already concluded that the object of the trust was a charitable purpose. Therefore, it must have been the testator's intent to create a valid charitable trust in order to accomplish the purpose. We reiterate a part of the quotation from 15 Am Jur 2d, Charities, § 105, which is as follows:

*"When a charitable intent appears on the face of a will, but the terms are broad enough to allow application of the fund either in a lawful or an unlawful manner, its application will be restricted within the bounds of the law in order to sustain validity."* (Emphasis supplied.)

Plaintiff cites in support of her contention that the trust in question is private and not public the case of *In re Shattuck's Will* (1908), 193 NY 446 (86 NE 455). In that case the court held that the statute of charitable uses applies to public and not to private charitable gifts. While the words "religious" and "eleemosynary" when used to designate institutions may necessarily imply that the institutions are engaged in public and not private charitable work, the words "educational" and "institutions"

have a broad significance and may refer to private as well as public organizations or charities and that since the terms are used in the disjunctive, the invalidity of the provision as to educational institutions renders the entire gift invalid.

The court in *Shattuck, supra,* went on to analyze decisions in which the rule had been pointed out saying (p 453):

"In *Sherwood* v. *American Bible Society,* 1 Keyes (NY) 561 (4 Abb App Dec 227), this court say: 'To constitute a charity the use must be public in its nature.'

"In *Smith* v. *Havens Relief Fund Society,* 44 Misc 594, 608,[3] referring to the law relating to charitable uses, it is said: 'It requires that the use shall be public, that the benefits shall be intended not for individuals as such but as representatives of a class; that the announcement of the altruistic aim shall not be a cover for the bestowal of a private bounty.'
\* \* \*

"In *Attorney General* v. *Soule,* 28 Mich 153, a will directed the setting apart of $10,000 to be expended according to the directions of the executors, 'for the establishment of a school at Montrose for the education of children.' It was held that the provision was so uncertain and indefinite as not to bind the trustees to an application of the fund to public charity, or even perhaps to charity at all as recognized in courts of equity, but clothed them with a discretion broad enough to permit of their applying the fund to a private school.

"In *Stratton* v. *Physio-Medical College,* 149 Mass 505 (21 NE 874), the will gave one-fourth of the net income of the residue of testator's property to the defendant to be used for the promotion of the medical art as favored and believed in by the testator during his lifetime and in support of that institution, as the trustees thereof should from time to time

---

3 See 118 App Div 678, 190 NY 557, affirming.—REPORTER.

determine. It appeared that the supposed corporation in the mind of the testator was neither a free nor a public school, but a private pecuniary enterprise. It was held that such an enterprise is not a public charity, even if indirectly it serves charitable ends.

"In *Haynes* v. *Carr*, 70 NH 463 (49 Atl 638) * * * the court say (p 483): 'It is undoubtedly the law in most states that where property is given to trustees, with power to apply it either to uses which are or those which are not within the classes included in charities, the whole must fail, so far as the application of the peculiar doctrines of charitable uses is concerned.'"

The case of *Attorney General* v. *Soule* (1873), 28 Mich 153, referred to in the *Shattuck* decision, *supra,* was decided many years before the enactment of the statute permitting charitable trusts in Michigan. Since 1915, charitable trusts in Michigan have been liberally construed.

The New York courts have in effect repudiated *Shattuck, supra,* as is evidenced in *Matter of Frasch* (1927), 245 NY 174 (156 NE 656). In that case, the will under consideration left a trust fund to be applied as follows (p 179):

"pay over the net income therefrom to one or more incorporated institutions in the United States, which shall be selected by the said trustee after advising with the American Chemical Society, upon the condition that the said institutions shall agree that the money so received shall be devoted to research in the field of agricultural chemistry."

It was ruled therein that the testator had provided for a fundamental charitable purpose. In *Frasch, supra,* there is no express limitation that the funds be given to "charitable or nonprofit institutions." The funds were to be given to "one or more incorporated institutions in the United States." It is

clear that in making its decision, the court conceived that "institutions" would include institutions of learning, such as "schools, colleges or universities." The court stated in part as follows (p 181):

"Research is the method used by modern *universities* and scientific foundations to increase the sum of human knowledge. Research conducted for such purpose and by such institutions is clearly 'educational' and 'benevolent' within the meaning of the statute." (Emphasis supplied.)

The Court pointed out that if the trustee might, under the will (p 183):

"choose a business corporation as one of the 'incorporated institutions' to which the income of the trust fund may be paid, and if further such business corporation may use that income for research to advance its own business interests, then undoubtedly the trust created is not valid."

The Court then considered the *Shattuck Case, supra,* quoting from it as follows (p 183):

" 'The will does not in terms refer in any way to the *use* to be made of the income of the trust fund. Such income is not in terms devoted to any purpose or object, and there is no direction by the testatrix to the instructions to which the income on the trust fund is paid as to what use they shall make of such gift. Its devotion to charity is dependent upon the object and purposes of the several institutions which by the grace of the trustee may become the beneficiaries thereof.' "

The last quotation points out the distinction between *Frasch* and *Shattuck. Shattuck* did not have an express underlying charitable purpose, whereas *Frasch* expressed a recognized charitable purpose. Schoder's will, considered herein, has an express recognizable charitable purpose. The *Frasch* deci-

sion goes on to uphold the gift and concludes as
follows (p 186):

"A bequest for such use is clearly within the
provisions of our statute for 'charitable uses.' Any
institution to which income of the bequest is paid
must apply it to a public use. No institution not
authorized to apply to such use the moneys received
by it could have been within the intention of the
testatrix. Even if the testatrix intended that the
trustee might use as an instrument in the execution
of the trust a private corporation authorized to carry
on research for the public benefit, if any such cor-
poration exists, the fact that the money was ear-
marked for a 'religious, charitable, educational or
benevolent use' would render inconsequential the
circumstance that the corporation had also other ob-
jects which are selfish in purpose."

In the case of *Matter of Durbrow* (1927), 245 NY
469, 473 (157 NE 747), the gift considered was to:
"my executor or executrix hereinafter named to dis-
tribute where he, or she as his successor or substi-
tute, in his or her judgment shall consider it will
be most effective in the advancement of Christ's
Kingdom on earth." This gift was upheld by the
court as a valid charitable trust. The court quoted
with approval the following language from Judge
Gray's opinion in *Greene* v. *Greene* (1891), 125 NY
506 (26 NE 739): "The endeavor is to find a way
of upholding the will, not of breaking it down; and
thus in every case the inherent purpose, if lawful,
should be effectuated through what legal channels
of construction may be open." The Court then pro-
ceeded and made its decision in the following man-
ner (p 476):

"Although a wide diversity of judicial opinion
exists as to the meaning which should be given to
the words 'indefiniteness of purpose' in this con-
nection (Bogert on Trusts, pp 200–204), a rule of

generous construction manifests itself in the more recent decisions of this court. Thus to sustain a charitable gift the word 'institutions' had been read to mean 'public institutions.' (*Matter of Frasch, supra.*) In the light of these decisions, words of unlimited discretion, inspired, when properly understood, with naught but unselfishness and religious purpose, readily may be, and should be, construed as being limited to suitable objects of charitable and religious gifts. The bequest is thereby preserved from destruction and devoted to the uses for which the testator intended it, rather than given to contentious next of kin. To hold this gift to be too indefinite and uncertain would be to disregard the elementary principles of the law of charitable uses. Its expressed purpose is to promote the cause of the Christian religion in the most general sense and it should be carried into effect accordingly."

In Bogert on Trusts and Trustees (2d ed) § 364, we find the following statement:

"If a gift is made in trust to distribute income or capital to existing educational institutions or hospitals, to be selected by the trustees in the exercise of their discretion, or to found a school, it may be argued that some schools and hospitals are run for private profit and not solely for the public benefit, and that a trust which does not expressly exclude aid to profit-making institutions is not a charitable trust. Reasoning of this type prevailed in a well known New York decision. The discretion to aid money-making institutions was held to be fatal to the perpetual trust, since all might be given to such institutions and there was no criterion for making a division between private enterprise and public institutions. This case has not, however, been favorably received and seems out of harmony with later decisions, but it has sometimes found favor in other courts."

In order to effect the intention of the testator in our case and in accord with the law just stated, we

read the word "public" in connection with the clause "school, college or university" as contained in the paragraph creating the trust.

Plaintiff cites the case, *Estate of Kline* (1934), 138 Cal App 514 (32 P2d 677), as authority for her position and as a similar case to that at hand. In that case the gift was established (p 516):

"to such persons, charitable organizations and/or corporations * * * organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by my said trustee in its absolute and uncontrolled discretion."

The court therein considered the question of whether "charitable" modified "persons," "organizations," and "corporations" and concluded that since the term charitable cannot be construed to modify persons or corporations, the gift must fall.

In the later California case, *Estate of Rollins* (1958), 163 Cal App 2d 225 (328 P2d 1005), the court considered a gift stated as follows: "The remainder to go to some charitable institution, or research fund, or for a suitable memorial to my mother and father (no statue or monument)."

In upholding the gift the court stated:

"To create a valid charitable trust, the bequest must limit the use of the fund to charitable purposes. If the language permits noncharitable, as well as charitable, uses the bequest cannot be held valid as a charitable trust. *Estate of Sutro,* 155 Cal 727, 734 (102 P 920); *Estate of Hinckley,* 58 Cal 457; 10 Am Jur, Charities, § 100; 10 Cal Jur 2d, Charities, 237–239. Determination of this question is, of course, a matter of construction of the language used by the testator. (115 ALR 1124 *et seq.*) The earlier decisions were somewhat quick to find the possibility

of a noncharitable use. (*Estate of Sutro, supra,* 155 Cal 727; see, also, dicta in *Estate of Hinckley, supra,* 58 Cal 457.) The more recent cases, however, indicate a more liberal approach, and are less inclined to search minutely for the possibility of a noncharitable use. Indicative of this tendency is the history of the rule in New York. Our supreme court in *Estate of Sutro, supra,* 155 Cal 727, cited and followed a decision of the court of appeals of New York (*In re Shattuck's Will,* 193 NY 446 [86 NE 455]) holding that a bequest in trust for 'religious, educational or eleemosynary institutions' to be chosen by the executor was invalid, because the bequest might go to a private educational institution conducted for profit. This decision has never been overruled, but it has been made clear that charitable bequests 'should not be read in an antagonistic spirit to disappoint the general intention of the will,' and that the rule of *Shattuck* should be 'strictly confined to its own facts.' *Matter of Durbrow* (1927), 245 NY 469 (157 NE 747); see, also, *Matter of Frasch* (1927), 245 NY 174 (156 NE 656); *Matter of Everson* (1944), 268 App Div 425 (52 NYS 2d 395); *Matter of Hamilton,* 185 Misc 660 (57 NYS 2d 359)."

In the recent California court of appeals case, *Estate of McKenzie* (1964), 227 Cal App 2d 167 (38 Cal Rptr 496), the trust considered was in the following language: "I want a trust to be formed payable as a reward to the person who decides the cause of Rhomatoid [*sic*] Arthritis and a cure for the same to the satisfaction of the Medical Board of the University of Calif. at L.A." The claimant therein attacked the gift because it would go to an individual and argued that such being the case the fact that a public benefit might result was immaterial. The *Kline Case, supra,* was cited as authority for claimant's position. The court rejected the *Kline* argument and found that the fact that the trust

assets may be paid to an individual in no way deprived the trust of its charitable character if the ultimate result complies with the test of charitable purposes. *Kline, supra,* was not controlling in *McKenzie, supra,* and neither is it controlling in our case.

Other cases have been cited by plaintiff but they are not analogous and therefore not applicable. We conclude for the reasons herein stated that paragraph 17 of Mr. Schoder's will created a public charitable trust, and not a private trust as claimed by plaintiff.

Plaintiff asserts that the use of the word "indirectly" in the clause "and to this extent the proceeds of said trust estate may be given to any school, college, or university as a gift or grant, if such gift or grant will either directly or indirectly carry out the purpose of this trust * * * for assisting and helping those having harelip or cleft palate," permits the trustee to use the trust estate for private purposes.

The common accepted meaning for the word "indirectly" as used in this part of the trust is evident *i.e.,* that of research, experimenting and developing better and less expensive techniques in assisting those having harelip or cleft palate. It could conceivably be to pay for research into the cause of harelip and cleft palate and search for the answer as to how to prevent these defects in birth. The old adage "an ounce of prevention is worth a pound of cure" has proven true in medical science through research for many years. It is still true and commendable. Research, devoted to developing new methods to help in this worthwhile charitable purpose, of aiding those suffering from harelip and cleft palate, is an indirect method to carry out the charitable purpose which does not in the least affect the trust's validity.

PA 1961, No 101 (CLS 1961, § 14.251 *et seq.* [Stat Ann 1965 Cum Supp § 26.1200(1) *et seq.*]) provides for the uniform administration of charitable trusts. This act adequately provides a method of control and enforcement to insure the proper administration of charitable trusts. We do not share plaintiff's apprehension that the funds of the trust may be diverted to private uses contrary to its avowed public charitable purpose.

The judgment of the trial court dismissing plaintiff's complaint and the denial of plaintiff's motion for a new trial are affirmed. Costs to defendant-appellee.

BURNS and HOFFIUS, JJ., concurred.