[No. 29921.  *En Banc.*  August 14, 1947.]

THILDE STALDER, *as Executrix, Appellant,* v. THE PACIFIC NATIONAL BANK OF SEATTLE *et al., Respondent.*[1]

*M. M. Pixley* and *Chadwick, Chadwick & Mills,* for appellant.

*Holman & Sprague* and *Charles I. Stone,* for respondent the Pacific National Bank of Seattle.

ROBINSON, J.—On December 12, 1941, Edward Frederick Stalder, then a widower, duly executed a will.  In the second paragraph of the instrument, he made certain specific bequests to several persons, classified as his "friends and loyal employees," and, in the third, a bequest of one dollar to his daughter, and then continued as follows:

[1]Reported in 183 P. (2d) 793.

"FOURTH: All the rest and residue of my estate I hereby devise and bequeath to The Pacific National Bank of Seattle, as Trustee, the same to be received, held, managed and distributed as follows:

"(a). To invest and re-invest the funds of my estate in good, safe securities. I do not limit the Trustee to investments fixed by law for investment of trust funds but call upon my Trustee to exercise its best judgment in selecting securities for investment purposes.

"(b). I hereby relieve my Trustee from the duty of complying with Chapter 229 of the Laws of 1941 of the State of Washington or any amendment hereafter made thereto.

"(c). To have and exercise the power and authority to sell, mortgage, lease and convey any and all property of my estate, both real and personal, at such price and upon such terms it may deem fit and proper, including the power and authority to lease real property for any term extending beyond the term of this trust.

"(d). To receive annually for its compensation, the fees customarily charged for similar services by Trust Companies operating in the City of Seattle and to re-imburse itself from the trust estate for all reasonable and necessary costs and expenses incurred in the administration of this trust.

"(e). To pay to my wife's brother, Bretislav Hodek, now of Prague, Czechoslovakia, the sum of Five Thousand ($5,000.00) Dollars at such time conditions in Europe have reached a condition where payment thereof can be made and in case of his death, the said sum is to be paid to his legal heirs as defined by the laws of descent of the State of Washington. I PROVIDE HOWEVER that said payment must be made, if made at all, within five (5) years from the date of my death and that if, within that time, my Trustee is unable to make payment or, if, in its belief, the same might be confiscated either in whole or in part by a foreign government, or taxed by the government of his or his heirs' domicile beyond a fair amount, then and in that event the payment thereof shall not be made and said sum shall become a part of the shares of my grandchildren hereinafter provided for.

"(f). Upon the oldest child of my daughter, Helen Marie Kroll, reaching the age of twenty-one years, the trust estate and all accumulated earnings thereof shall be divided into as many equal parts as there are then children of my said daughter surviving. One part shall then be paid over

to the oldest child and thereafter one part, and the accumulated earnings thereof to each remaining child as he or she reaches the age of twenty-one years, until the share of the youngest child has been paid, whereupon this trust shall cease and the Trustee be relieved from further duty or liability.

"(g). I direct that the sums herein provided to be paid to my grandchildren shall not be subject to assignment either by the beneficiary or by operation of law, nor shall the same be subject to attachment or garnishment in the hands of the Trustee.

"FIFTH: I hereby appoint The Pacific National Bank of Seattle as Executor of this, my Last Will and Testament, to act as such without bond and without intervention of Court, with full power to sell and convey any and all property of my estate at such price and upon such terms it may deem proper. Should it be succeeded by another National Banking Corporation, its successor shall act in its place, both as Executor and Trustee, with the same power and authority.

"LASTLY: I hereby revoke all prior Wills made by me."

Five days later, Mr. Stalder, as trustor, executed a trust agreement with the defendant, The Pacific National Bank of Seattle, hereinafter called "the bank." Under article I, "Property Covered by Agreement," the instrument reads as follows:

"This agreement shall cover:

"(a) The money that may accrue or become payable at the Trustor's death upon the policies described in Schedule 'A' attached hereto, including additional policies subsequently made subject hereto after deduction of any then outstanding loans or advances now or hereafter made by the respective insurance companies on account of any such policies.

"(b) Any other property, real or personal, devised, bequeathed, assigned, granted or conveyed to the Trustee by the Trustor or by any other person for the purpose of the trust hereby created, such property to be held by the Trustee subject to the terms of this indenture in the same manner as if it had been included in the description of the property hereby transferred to the Trustee."

Listed in schedule "A" is Phoenix Mutual Insurance Company, Policy No. 669,525, amount, five thousand dol-

lars. To this schedule no other property has since been added.

Under (a) of article II, "Rights Reserved by the Trustor," it is provided that he may assign or hypothecate the policy or borrow in accordance with its provisions, and receive all dividends, surrender values, and so forth. Subparagraph (b) of said article provides, in part, as follows:

"(b) To withdraw from the operation of this trust any or all of said policies, reserving to himself the power of partial or total revocation, or a modification of this trust, as herein provided, at any time during his life, and any such partial or total revocation or any modification shall be valid and fully accomplished whenever the Trustee shall receive from the Trustor a written notice that the Trustor thereby modifies or revokes this trust in whole or in part."

Article IV, "Powers and Duties of the Trustee," provides, in part, as follows:

"(a) Upon the death of the Trustor the Trustee shall have power to collect any insurance which may be or become due under and by virtue of any and all policies held by it under the terms hereof and shall have power to receive and receipt for the proceeds of any of such insurance policies and in case of controversy or litigation over the collection of same, said Trustee is authorized and empowered to adjust, compromise, or otherwise settle any contest concerning said policies or the collection thereof."

(This is followed by stipulations concerning the nature of investments.)

Article IX, entitled "Distribution of Trust Property," is of the utmost importance in the consideration of the question raised in the cause, and is now quoted in full:

"(a) The insurance proceeds collected hereunder shall be invested as provided in ARTICLE IV above and subject to the provisions of Paragraph (b) of this article, shall be allowed to accumulate until the general estate of the Trustor, of which The Pacific National Bank of Seattle is also named as executor and trustee under terms of said Trustor's Will dated December 12th, 1941, has been distributed by said bank as executor to itself as trustee. When the distribution of said general estate is made to said bank as Trustee, it shall also combine and merge with the trust estate created by said Trustor's Will the insurance funds

subject hereto together with their substitutions and/or accumulations, all to be held, managed, invested and distributed in accordance with the terms and provisions of said Last Will and Testament of said Trustor dated December 12th, 1941.

"(b) I hereby relieve the Trustee from the duty of complying with the provisions of Chapter 229 of the Laws of 1941 of the State of Washington, or any amendment hereafter made thereto."

The will of December 12, 1941, was delivered to the bank and filed with the trust agreement and the insurance policy, and none of these three documents was ever removed from its possession by Mr. Stalder. On February 5, 1942, Mr. Stalder married the plaintiff in this action. On June 18, 1942, he executed another will. In this will, he repeated the bequests to his employees and friends which were included in the will of December 12, 1941, and continued as follows:

"THIRD: To my daughter, Helen Marie Kroll, I devise and bequeath the sum of One ($1.00) Dollar. [Helen Marie Kroll was made the beneficiary of a $10,000 insurance policy by another instrument.]

"FOURTH: To my brother-in-law, Bretislav Hodek, of Prague, Czechoslovakia, provided he survives me, I bequeath the sum of Twenty-five Hundred ($2,500.00) Dollars. If he does not survive me and leaves a child or children, then said sum shall go and is bequeathed to his surviving children in equal shares.

"FIFTH: I devise and bequeath to my wife, Thilde Stalder, all the rest and residue of my estate, both real and personal and wherever situated.

"SIXTH: I appoint my wife, Thilde Stalder, as executrix of this, my Last Will and Testament and direct that she act as such without bond and without intervention of Court with full power to sell, mortgage and convey real property without being required to show necessity therefor.

"LASTLY: *I hereby revoke all prior wills made by me.*" (Italics ours.)

Mr. Stalder died on March 10, 1945. The above will was admitted to probate by decree entered on March 16th, in which the appointment of Thilde Stalder as executrix was confirmed, and she subsequently qualified as such. On or

about May 16th, the bank received from the insurance company the proceeds of the policy, amounting to $5,036.61. In July, 1945, Thilde Stalder, as executrix of her deceased husband, instituted this action against the bank to recover those proceeds. In due course, the bank filed an answer, cross-complaint, and petition. In this pleading, the bank requested that Bretislav Hodek, his adult heirs, and minor heirs, if any, and the minor children of Helen Marie Kroll be brought into the action. In due course, Wayne C. Booth was appointed guardian *ad litem* for the Kroll children, and filed a complaint and answer in their behalf. Mr. Booth also filed a complaint and answer on behalf of Hodek.

Briefly stated, both the bank and the guardian *ad litem* took the position that Stalder never revoked the trust, and that, although he revoked the will of December 12, 1941, that instrument could properly be used to spell out the duties and obligations of the trustee with respect to Hodek and the Kroll children, and that the bank was entitled to keep and use the proceeds of the insurance in order to discharge its trust. Both the bank and the guardian *ad litem* prayed that the plaintiff, Thilde Stalder, take nothing by her complaint, and for judgment against her for their costs. The guardian *ad litem* of the Kroll children, and also the plaintiff, Hodek, further prayed:

"That the court decree that the Trust Agreement (plaintiff's exhibit A) and the provisions of the will (defendant's Exhibit 1) which are incorporated in the Trust Agreement by reference establish a valid and subsisting trust with reference to the funds held by the defendant and that the defendant be directed to administer the said trust according to the provisions of the said trust agreement."

The bank, however, more conservatively prayed:

"That the court construe the Trust Agreement and the will to which reference is made therein (Exhibit One attached hereto), and instruct defendant with respect to the disposition of funds received by it under the Trust Agreement and the insurance policy described therein."

The statement of facts is very brief. After hearing certain oral evidence and examining the exhibits, the material

parts of which have been heretofore quoted, the trial judge rendered an oral decision of considerable length, the summation of which is as follows:

"I am·in accord with those three propositions of law, that a trust estate did come into existence; that it can only be revoked during the life time of the trustor, and not by a will to take effect upon his death, and in order to be revoked it cannot be revoked by the terms of the will, but must be done strictly according to the provisions of the trust agreement itself. And further that the words used in the first will, which has been revoked, as far as being referred to by the trust agreement are incorporated in and made a part of the trust agreement, and are of full force and effect for that purpose, although not for the purposes of a will.

"For those reasons the case will be dismissed.

"On the question of attorneys' fees and fees for the trustee, I will make no allowance in this action, for the reason the Court has upheld the trust and any such fees are to be allowed upon proper application to the Court on the distribution of the trust estate, if this decision is upheld.

"MR. PIXLEY: Does the Court find there is a trust here that is capable of performance by the trustee; that the trustee can perform the functions of trustee?

"THE COURT: *That is the effect of my decision.*

"MR. STONE: Are you going to give any instructions to the trustee in this proceeding?

"THE COURT: I do not consider it my duty to do so at this time." (Italics ours.)

■ Perhaps, it was not, but, in view of the fact that the trustee bank had prayed for instructions and all interested parties were before the court in this action, it is unfortunate that that matter was not given consideration. The proceeds of the insurance policy, of course, do not belong to the bank. They must ultimately be disposed of in some way. We feel that, if the court had undertaken to instruct the trustee bank, as it requested be done, it might have come to the conclusion that the proceeds should be paid over to Thilde Stalder, as executrix of the estate of her deceased husband. In other words, we think plaintiff's action was prematurely dismissed without consideration of the real problem presented in the case.

For the purpose of this opinion, at least, it will be conceded that the three propositions of law which the trial judge stated in the summation of his opinion are sound: (1) that a trust estate did come into being; (2) that it could only be revoked during the lifetime of the trustor, and then only by the method provided in the trust agreement; and (3) that, despite the revocation of the will of December 12, 1941, its language may be used in determining the terms of the trust. But we cannot agree that these reasons justified a dismissal of the appellant's action. For convenience, we requote subparagraph (a) of article IX of the trust agreement:

"(a) The insurance proceeds collected hereunder shall be invested as provided in ARTICLE IV above and subject to the provisions of Paragraph (b) of this article, shall be allowed to accumulate until the general estate of the Trustor, of which The Pacific National Bank of Seattle is also named as executor and trustee under terms of said Trustor's Will dated December 12th, 1941, has been distributed by said bank as executor to itself as trustee. When the distribution of said general estate is made to said bank as Trustee, it shall also combine and merge with the trust estate created by said Trustor's Will the insurance funds subject hereto together with their substitutions and/or accumulations, all to be held, managed, invested and distributed in accordance with the terms and provisions of said Last Will and Testament of said Trustor dated December 12th, 1941."

It would seem, from the provisions of the above article, that the terms of the insurance policy were probably such that its proceeds might come into the bank's possession before Mr. Stalder's death. However that may be, it is clear from the language of the will that no beneficiary thereof could lay claim to the specific proceeds of the policy or any portion thereof. They were to be paid into Stalder's estate and, when intermingled with the other property, held and distributed by the bank *when and if* it became the trustee and executor by virtue of certain paragraphs of the will which read as follows:

"FOURTH: All the rest and residue of my estate I hereby devise and bequeath to The Pacific National Bank of Se-

attle, as Trustee, the same to be received, held, managed and distributed as follows: . . .

"FIFTH: I hereby appoint The Pacific National Bank of Seattle as Executor of this, my Last Will and Testament, to act as such without bond and without intervention of Court."

Reading all of the provisions of the will of December 12, 1941, into the trust agreement, as we agree should be done, who was the beneficiary of the trust thereby created? It would seem tenable that the actual beneficiary was the estate of Stalder, and that Hodek and the Kroll children would not become *cestuis* as to the bank unless and until the bank became the trustee and executor of the estate. When and if the bank, as a party to the trust agreement, transferred the proceeds of the policy from itself, in its capacity as trustee under the trust agreement, to its new and different character as trustee under the will and executor thereof, Hodek and the Kroll children would, through the provisions of the will, have a direct interest in the fund of which the proceeds of the policy was an unidentifiable part, and a right to enforce their interests as against the bank, not as trustee created by the trust agreement, but as the trustee and executor nominated by the will and confirmed by the court.

However, all of the parties agree that Stalder had a right to revoke the will of December 12, 1941; that he legally did so; and that Thilde Stalder, the plaintiff in this action, is the lawful nonintervention executrix of the Stalder estate. The bank is not, *and can never be*, the trustee and executor of Stalder's estate.

Let us suppose that it can be demonstrated, by reason of some fact or facts of which we are not apprised, that the suggestions we have heretofore made are unsound or untenable for some other reason, and it be concluded that Hodek and the Kroll children were *cestuis* from the beginning and therefore have valid claims to the proceeds of the insurance in the hands of the bank. How and by what method are their rights to be determined as between them or at all?

Under the will of December 12, 1941, in which their rights against the bank as trustee, if any, must be spelled out, it is provided that the bank, if and when it became trustee, should be obligated:

"(e). To pay to my wife's brother, Bretislav Hodek, now of Prague, Czechoslovakia, the sum of Five Thousand ($5,-000.00) Dollars, at such time conditions in Europe have reached a condition where payment thereof can be made and in case of his death, the said sum is to be paid to his legal heirs as defined by the laws of descent of the State of Washington. I PROVIDE HOWEVER that said payment must be made, if made at all, within five (5) years from the date of my death and that if, within that time, my Trustee is unable to make payment or, if, in its belief, the same might be confiscated either in whole or in part by a foreign government, or taxed by the government of his or his heirs' domicile beyond a fair amount, then and in that event the payment thereof shall not be made and said sum shall become a part of the shares of my grandchildren hereinafter provided for."

The claims of the Kroll children against the bank, if any, must be based upon the following paragraph of the will:

"(f). Upon the oldest child of my daughter, Helen Marie Kroll, reaching the age of twenty-one years, the trust estate and all accumulated earnings thereof shall be divided into as many equal parts as there are then children of my said daughter surviving. One part shall then be paid over to the oldest child and thereafter one part, and the accumulated earnings thereof to each remaining child as he or she reaches the age of twenty-one years, until the share of the youngest child has been paid, whereupon this trust shall cease and the Trustee be relieved from further duty or liability."

Even if the $5,036.61, the proceeds of the policy, are impressed with trusts in favor of Hodek under paragraph (e) of the will, and in favor of the Kroll children under paragraph (f), what is the extent of the interest of each of the beneficiaries? How much of the fund is to be paid over to Hodek within five years after Stalder's death, if paid at all, and how much is to be retained and invested for the Kroll children? From what we have in this record, we do not now see how this question can be answered by

any court. We are, of course, mindful of the fact that courts, in the exercise of their equity powers, can, and do, go to considerable length to prevent a trust from failing on account of impossibility of performance. But they have no creative power. Usually, in such a case, the court is relegated to determining from all the evidence what the trustor would have probably wanted done with the fund under all the circumstances. Obviously, Stalder's last will, that is, the will he actually left in force, would be very relevant to such an inquiry.

In view of all the circumstances, it seems best to remand this cause to the trial court, not for a new trial, but for further trial. Since all of the parties are before the court, and the bank has prayed for the direction of the court, there is no need for another separate or independent action or proceedings. All phases of the controversy may be disposed of in the instant cause. If it be determined, upon further consideration, that there is an existing trust which is susceptible of performance, it is in every way desirable that the bank be instructed in this action how that may be done. If it should be determined that there is no trust which it is possible to carry out, it would seem that the plaintiff in this action would be entitled to the proceeds of the policy now held by the bank, and, in such case, the trial court would be in a better position than we can be to determine what offsets or rightful claims the bank has in the way of service fees, determination fees, attorneys' fees, and so forth.

The judgment of dismissal from which this appeal is taken is vacated and set aside, and the cause is remanded to the superior court of King county for the taking of such additional evidence as may be deemed necessary to determine what rights, if any, Bretislav Hodek and the Kroll children, respectively, have in the insurance funds in the hands of respondent bank, and, if they have such rights, in what manner the bank can discharge these obligations,

and, if not, what disposition shall be made of the funds in its possession.

It is so ordered.

MALLERY, C. J., MILLARD, STEINERT, SIMPSON, JEFFERS, SCHWELLENBACH, and ABEL, JJ., concur.