[No. 2321-1.   Division One.   February 18, 1975.]

HENDRIK S. BAARSLAG, JR., et al., *Respondents*, v. ALICE HAWKINS et al., *Appellants*.

*John Caughlan,* for appellants.

*Guttormsen, Scholfield & Stafford, Jack P. Scholfield,* and *John G. Cooper,* for respondents.

SWANSON, J.—This case presents the first appellate review in this jurisdiction directed to the applicability of the wills doctrine known as incorporation by reference.[1] The context of our review is a testator's unsuccessful attempt to create a charitable trust.

Hendrik S. Baarslag, Sr., died on March 2, 1972, leaving a will dated August 16, 1968. In the fourth paragraph of this will,[2] the testator gave "the bulk of my property" to seven named "devisees-trustees" in an "unlimited trust" to be

---

[1] Other Washington cases involving the construction of instruments executed contemporaneously with a will do not discuss the specific elements of this doctrine. *See In re Estate of Drown,* 60 Wn.2d 110, 372 P.2d 196 (1962); *Stalder v. Pacific Nat'l Bank,* 28 Wn.2d 638, 183 P.2d 793 (1947); *Fowler v. Lanpher,* 193 Wash. 308, 75 P.2d 132 (1938).

[2] Paragraph 4 of the will states:

"It is my desire that the bulk of my property hereinafter described in this Article Four shall be used for certain purposes which are dear to my heart, and which are known to my Executor and the devisees-trustees hereinafter named, in accordance with oral and written directions that I have given to them, and such devisees-trustees take such property in trust for these purposes, but without any limitation under this will, to hold, use, or dispose of the same in their sole discretion.

"To that end, and in such unlimited trust, I give, grant, bequeath and devise to Alice Hawkins of Tacoma, Washington, and to Elmer Kistler, John Caughlan, Marion Kinney, Vivian George, of Seattle, Washington, and to Jeanette Wimbles and Orilla Kildall of Tacoma, or to the survivors of them, the real and personal property referred to below. Upon receiving from the Executor of my estate, the gifts, grants, bequests and devisees referred to in this article, the said trustees, or such of them as may be surviving me at the time of my death, shall execute the wishes, desires and purposes which I have in mind and with respect to which I have given written and oral instructions as guide lines to them, and in accordance with the following principles:

"1. Such trustees may be and are empowered by majority vote, looking nevertheless always for unanimity in voting wherever possible to increase their number to not exceed six (6) trustees in all, the additional trustees to be elected by those named in this will. Such elected trustees shall exercise exactly the same powers as the original trustees herein named, and shall participate with the original trustees as though they had been originally named in this Will.

used "for certain purposes which are dear to my heart, and which are known to my Executor and the devisees-trustees hereinafter named, in accordance with oral and written directions that I have given to them . . ." Paragraph 4 also provided that the devisees-trustees "shall execute the wishes, desires and purposes which I have in mind and with respect to which I have given written and oral instructions as guide lines to them . . ." An undated document written in the testator's handwriting and entitled "Guidelines for some persons named in My last will and testament" (hereinafter referred to as "handwritten guidelines") was found with the testator's will.

Respondents, children and grandchildren of the testator, commenced this action against the appellants who are the named "devisees-trustees" in paragraph 4 of the testator's will, by seeking a declaratory judgment as to the rights of the parties under that paragraph. Subsequently, the respondents moved for a summary judgment declaring the trust purportedly created by paragraph 4 to be invalid and directing the executor to distribute the "trust property" to the respondents in accordance with a residuary clause contained in the will.

On May 21, 1973, the trial court entered an order granting summary judgment as follows:

1. Paragraph Fourth of the Last Will and Testament of Hendrik Stephanus Baarslag does not qualify as a private trust and does not qualify as a charitable trust, there being no language in the Will that would prevent the trustees from using the trust property for non-charitable purposes and there being no direction in the will that the

"2. Decisions of the trustees shall be by majority vote at meetings in which a quorum shall consist of all of the named trustees. *Provided,* however, that if for any reason any one of such original or additional trustees shall be unable to serve, which inability shall be demonstrated by the inattendance of such trustee at three (3) successive meetings called not more frequently than once every two (2) weeks, then such trustee may be replaced by the majority vote of the remaining trustees.

"The property herein devised is described as follows, or such of the same as may be standing in my name at the time of my death:

[legal description omitted]

"The real property devised above shall be received and held by my

trust property was to be used only for charitable purposes; and

2. The "Guidelines for Some Persons Named in my Last Will and Testament" is not sufficiently identified or referred to in the Will to incorporate said Guidelines into the Will by reference and therefore does not legally constitute a part of the Last Will and Testament of Hendrik Stephanus Baarslag.

This appeal follows.

In assigning error to the trial court's order of summary judgment, appellants make two interdependent arguments: (1) The fourth paragraph of testator Baarslag's will incorporates by reference the handwritten guidelines; and (2) the handwritten guidelines, when incorporated into the testator's will, create a valid charitable trust with the appellants as trustees.[3]

At the outset, we note that in the absence of a statutory prohibition, there is no obstacle to our recognition of the common-law doctrine of incorporation by reference. *See* RCW 4.04.010. Indeed, the doctrine appears to be recognized in all but a minority of states. *See generally* 2 W. Page, *Wills* § 19.18 *et seq.* (3d ed. 1960); 94 C.J.S. *Wills* § 163 (1956); 57 Am. Jur. *Wills* § 242 (1948). Further, in the case at bar, the opposing parties do not disagree as to what constitute the basic elements of the doctrine which are stated generally in 2 W. Page, *Wills* § 19.18 (3d ed. 1960) as follows, at pages 88-89:

[T]he following requisites must be complied with and satisfied in order to incorporate a nontestamentary docu-

---

devisees as trustees named in this paragraph, or by the survivor of such trustees to be held by such trustees or disposed of by them in the sole discretion of such trustees without any reservations whatsoever, as though such gifts, grants, bequests and devices were given to such trustees as natural objects of my bounty, in confidence that such trustees will use and apply such gifts in accordance with my wishes and desires as expressed."

[3]Appellants make no claim that the will standing alone, without incorporation of the handwritten guidelines, is sufficient to create either a charitable or a private trust, nor do they argue that incorporation of the handwritten guidelines would create a private trust. In any event, none of these possible contentions has any merit.

ment into a will by reference. The will itself must refer to such paper to be incorporated as being in existence at the time of the execution of the will, in such a way as reasonably to identify such paper in the will, and in such a way as to show testator's intention to incorporate such instrument in his will and to make it a part thereof. Such document must in fact be in existence at the time of the execution of the will. Such document must correspond to the description thereof in the will and must be shown to be the instrument therein referred to. These requisites must co-exist in order to incorporate a document into the will. The absence of any one of them will prevent such incorporation.

(Footnotes omitted.) *See also* 94 C.J.S. *Wills* § 163 (1956); 57 Am. Jur. *Wills* § 233 *et seq.* (1948); Annot., 144 A.L.R. 714 (1943).

■ In reviewing the summary judgment granted in the case at bar, we are required, as was the trial court, to review the matter in the light most favorable to the appellants, the party against whom the motion was granted. *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974). On appeal, neither party argues there is a dispute as to any material fact, and therefore we must affirm the trial court provided it appears that the respondents are entitled to judgment as a matter of law. *See* CR 56(c). Thus, the issue presented is whether or not the appellants have demonstrated in fact and in law that the will here in question incorporates by reference the handwritten guidelines.

■ The burden of proving incorporation by reference lies upon the party claiming it, in this case, the appellants. *See* 94 C.J.S. *Wills* § 163(c) (1956). The record indicates that the appellants have established at least two of the elements of incorporation by reference. First, it is apparent that paragraph 4 of the will makes reference to "written instructions" which the testator has "given . . . as guide lines," and therefore the will refers to *some* writing as being in existence at the time the will was executed. Second, respondents apparently concede, and the record establishes, that the handwritten guidelines were in fact in existence at the time the will was executed.

The legal dispute presented by the parties—which appellants contend was improperly resolved by the trial court—centers upon the remaining two requisites for incorporation by reference, namely, that the will must (1) sufficiently identify the writing sought to be incorporated; and (2) establish the testator's intention to incorporate *that* writing. Obviously, the second requisite is unlikely to be satisfied absent satisfaction of the first, and therefore we shall limit our discussion to the matter of identification.

Appellants argue that the handwritten guidelines are identified sufficiently in the fourth paragraph of the testator's will by the reference to "written instructions . . . given . . . as guide lines . . . ." They argue that the handwritten guidelines clearly were labeled "guidelines"; that the last page of the handwritten guidelines included the initials and addresses of each of the appellants named in the fourth paragraph of the will; and that it is uncontradicted that the appellants had received copies of the handwritten guidelines. Therefore, appellants conclude, the handwritten guidelines clearly correspond to the writing referred to in the will.

█ As a matter of law, we cannot agree. Respondents correctly point out that the identification of a document incorporated by reference in a will must be found *in the will itself*. In this connection, it is stated in 2 W. Page, *Wills* § 19.23 (3d ed. 1960), at pages 96-97:

> In order to operate as an incorporation, the will must refer to the instrument to be incorporated and must describe it with sufficient certainty that it may be identified and distinguished from other similar documents. These requirements are intended to protect against fraud, substitution and tampering. . . .
>
> . . .
>
> The document sought to be incorporated in the will by reference must be so described in the will that this description, together with evidence of the identity and genuineness of the document, will be sufficient to show that it is the document referred to in the will. *The description in the will must be in language which is so clear and unambiguous that the identity of the documents is read-*

*ily established.* If the will is drawn in such vague or inaccurate terms that the document produced can be identified with that mentioned in the will only by extrinsic evidence outside of the will or contradicting its description, such document cannot be taken as a part of the will, since such a will would be in part oral, and hence in violation of the statute of wills.

(Footnotes omitted. Italics ours.)

Here, the will makes reference in its fourth paragraph to "written and oral instructions as guide lines . . ." It does not refer to the handwritten guidelines by name ("Guidelines for some persons named in My last will and testament") or by date, nor does it make reference to any of the extrinsic matters relied upon by the appellants, provable *only* by the existence of the handwritten guidelines which is proof independent of the will. Although appellants make no contention that the reference in the will to "oral instructions" has any validity, and it clearly does not (*see* RCW 11.12.020), the presence of such a reference is indicative of the vagueness and uncertainty of language which makes the will insufficient to incorporate by reference the handwritten guidelines. *See In re Estate of Safley,* 193 N.W.2d 118 (Iowa 1971); *In re Estate of Cox,* 8 Cal. App. 3d 168, 87 Cal. Rptr. 55 (1970); *Taylor v. Republic Nat'l Bank,* 452 S.W.2d 560 (Tex. Civ. App. 1970); *In re Estate of Erbach,* 41 Wis. 2d 335, 164 N.W.2d 238 (1969); *Hendren v. Brown,* 364 S.W.2d 329 (Ky. Ct. App. 1963).

Moreover, even if we were to disregard the testator's reference to "oral instructions," the general and nondescriptive reference to "written instructions . . . given . . . as guide lines" suffers from the same defect in identification which was disapproved in *Taylor v. Republic Nat'l Bank, supra,* where the court, quoting with emphasis and approval from the earlier case of *Brooker v. Brooker,* 130 Tex. 27, 106 S.W.2d 247, 253 (1937), observed at pages 37-38:

*In the same manner a testator could refer in general language to any other class of documents as already executed by him, make such documents parts of his will by*

*reference, and then destroy them, and no one would be the wiser. . . . each particular document should be identified by the will* so as to leave the intention of the testator in regard thereto reasonably free from doubt.

(Italics ours.) Significantly, appellants cite no authority which approves language similar to that here in question. *But see generally* 2 W. Page, *Wills* § 19.23 (3d ed. 1960). In any event, we approve the approach stated in 94 C.J.S. *Wills* § 163 (1956) as follows at pages 954-56:

Considerable caution must be exercised in applying the doctrine of incorporation by reference. The reference in the will must show an intention on the part of the testator to incorporate or adopt the document referred to. The intention of the testator to incorporate into a will a paper or document must clearly appear from the will, a mere reference thereto without evidence of such intention being insufficient. . . .
. . . The will must clearly and definitely describe or identify the documents intended to be incorporated, or render them capable of identification by extrinsic evidence, so that no room for doubt can exist as to what papers were meant.

(Footnotes omitted.)

We conclude that the trial court correctly determined that testator Baarslag's will is insufficient to identify the handwritten guidelines as a writing intended by the testator to be incorporated by reference into his will. In affirming the trial court, however, we need not rest our holding solely upon the failure of the testator to comply with the doctrine of incorporation by reference. Even if we were to assume arguendo that the handwritten guidelines properly may be deemed a part of the testator's will, it would still be necessary to uphold the trial court because we do not accept appellants' argument that the will and the handwritten guidelines, taken as a whole, are sufficient to create a charitable trust.

As the respondents contend, there is no language in either the will or in the handwritten guidelines which limits the use of the trust funds purportedly created to charitable purposes or, conversely, prohibiting the use of such

funds for noncharitable purposes. In the absence of such language, and given the existing language of the testator's will, no charitable trust is created. *See generally* 2 Restatement (Second) of Trusts § 398 (1959); Annot., 115 A.L.R. 1123 (1938). As our State Supreme Court observed in *In re Estate of Long,* 190 Wash. 196, 198, 67 P.2d 331 (1937):

> It is also a rule, of which there appears to be no disapproval, that a bequest which, by its terms, may be applied to objects which are not charitable in the legal sense, and to persons not defined by name or by class, is too indefinite to be carried out. . . .
>
> Where a bequest or a devise disposes of funds for purposes other than charitable, and leaves the question of whether it is to be devoted to charitable purposes or to other uses, noncharitable, entirely to the discretion of the executor or executrix, the bequest or devise is not lawful.

(Citations omitted.) Appellants contend that any indefiniteness in the trust which testator Baarslag attempted to create is cured by the discretion placed in the appellants, as "devisees-trustees," to select the purposes for which the trust funds may be expended and, in this connection, appellants place great reliance upon *In re Estate of Planck,* 150 Wash. 301, 272 P. 972 (1928). In *Planck,* however, as distinguished from the case at bar, the will there in question specifically limited the trustee's discretion " 'to such *charitable* purposes as she may believe to be fit and proper recipients thereof . . .' " *Planck, supra* at 303. (Italics ours.)

Neither *Planck,* nor any other case cited by appellants, represents a court's approval of a "charitable" trust granting a trustee the discretion to utilize trust funds in the absence of a limitation to charitable purposes. In *In re Estate of Long, supra,* the court struck down a private trust, in which the executor had been given the power to select the beneficiary, on the ground that the trust by its terms permitted the trustee to use the funds for either a charitable or noncharitable purpose. If there had been a limitation of the executor's discretion such that he could

only choose charitable beneficiaries, our State Supreme Court indicated a different rule might apply, observing in *Long* at pages 199-200:

> It also should be noted that the bequest here involved was not one of a public or charitable character, and, if such were the case, also, a different question would be presented.
>
> . . .
>
> In the case of *Chellew v. White,* 127 Wash. 382, 221 Pac. 3, upon which the respondent appears to particularly rely, the court was considering a will which disposed of property for a charitable purpose, and it is therefore distinguishable.

*See also Yeager v. Johns,* 484 S.W.2d 211 (Mo. 1972); *Epperly v. Mercantile Trust & Sav. Bank,* 415 S.W.2d 819 (Mo. 1967); *Love v. Sullivan,* 5 Mich. App. 201, 146 N.W.2d 117 (1967); *In re Estate of Rollins,* 163 Cal. App. 2d 225, 328 P.2d 1005 (1958). As in *Long,* neither the will nor the handwritten guidelines involved here create a trust limited to a public or charitable character, nor does either document reflect on its face the intention of the testator to impose such a limitation. The will, as we have previously noted, purports to create an "unlimited trust," and the handwritten guidelines are of a general and indefinite nature, authorizing the expenditure of funds to provide assistance in "immediate emergencies concerning progressive leaders . . ." and in the event of an undefined "special 'great opportunity' . . ." Although there is a limitation expressed in the handwritten guidelines that the funds are not to be spent for "ordinary needs," it nevertheless is apparent that such guidelines fail to limit the trustees to the expenditure of charitable funds in the legal sense.[4]

---

[4]The handwritten guidelines are nine pages in length, plus a 1-page printed article written by the testator, which is identified as "part of the 'Guide Lines' " and entitled, "Millions Killed, But To Be Alive Under Fascism, was Worse!" The first seven pages of the handwritten guidelines constitute an essay apparently setting forth the testator's historical and social theories and, in addition, under the subheading, "Guide Lines," the following language appears:

> First: Under no conditions shall resources of this limited fund, be spent for ordinary needs.

Therefore, we conclude that even if the handwritten guidelines are deemed incorporated by reference into the testator's will, the trust which the testator attempted to create is too indefinite in its terms to be sustained. Appellants correctly point out that in construing a will we must ascertain and give effect to the intent of the testator to the extent that it is possible to do so. *Anderson v. Anderson*, 80 Wn.2d 496, 495 P.2d 1037 (1972); *In re Estate of Vance*, 11 Wn. App. 375, 522 P.2d 1172 (1974); *In re Estate of Patton*, 6 Wn. App. 464, 494 P.2d 238 (1972). *See* RCW 11.12.230. We also are cognizant of the rule that where the testator's charitable intent is apparent, a will should be construed to favor the creation of a charitable trust. *See, e.g., In re Estate of Wilson*, 111 Wash. 491, 191 P. 615 (1920); *Yeager v. Johns, supra; Love v. Sullivan, supra.* In this case, however, we are unable to ascertain the testator's intent, either from the handwritten guidelines or from the will itself, and therefore we cannot effectuate it.

To summarize, we hold that the trial court correctly concluded that testator Baarslag's will fails to create either a private or a charitable trust and that the handwritten guidelines are not sufficiently identified in the will to be

---

Second: At the very beginning a discussion shall be arranged to decide what amounts of the funds shall be always on hand in cash or in funds, which immediately can be turned into cash; so that in pressing, immediate emergencies concerning progressive leaders, these persons can be assisted and protected.

Third: Other funds shall be invested in such a way that same are protected from depreciation.

Fourth: These funds mentioned in the Third paragraph shall only be used in special grave emergencies, political or social, when after meeting of the group of 4, 5 or 6 persons the majority decides, that by using the funds, that grave emergency can be fully overcome.

Fifth: These funds may also be spent when a special "great opportunity" presents itself. Originally I was opposed to this "Fifth" point, as it would appear, that during a great opportunity, well meaning people would be willing to provide the needed funds. However, thinking about the phrase: "Opportunity knocks at the door only once," I shall include this "Fifth" point, and advise a prompt approach by the 4, 5 or 6 members, but their action to be decided on after careful, deliberate analysis of the "great opportunity" and I advise a negative vote, if any doubt of success overshadows the possible gains.

deemed incorporated by reference therein. Further, even assuming the written guidelines were incorporated into the will by reference, both the will and the guidelines are insufficient to create a charitable trust as a matter of law.

The judgment is affirmed.

FARRIS and CALLOW, JJ., concur.

Rehearing by Court of Appeals pending November 3, 1975.