[No. 22039-7-III.   Division Three.   July 8, 2004.]

JAMES V. WOODARD, *as Personal Representative, Respondent,* v. JACQUELINE GRAMLOW, *Appellant,* DAVID J. YOUNG, *Respondent.*

---

*Thomas M. Smith*, for appellant.

*James V. Woodard*; and *Douglas D. Lambarth* (of *Lambarth Law Office*), for respondents.

SCHULTHEIS, J. — After disputes arose concerning the administration of Charlene Young's estate, James Woodard was appointed by the court to be the personal representative (PR). The main source of controversy is a life insurance policy that named Jacqueline Gramlow, the decedent's half sister, as the sole beneficiary. Although Ms. Young died testate, her will was inartfully drafted by Ms. Gramlow, who is not an attorney. In an attempt to settle the estate, the PR asked the court to determine the rights of the parties by interpreting certain documents. The trial court ultimately found that the will created a testamentary trust. It also determined the proceeds from the insurance policy formed the res of that trust, which was subject to the administration and control of Ms. Young's estate. Dissatisfied with the ruling, Ms. Gramlow appeals. Finding no evidence of trial court error, the order is affirmed. Mr. Woodard's request for attorney fees is granted subject to his compliance with RAP 18.1.

FACTS

Jacqueline Gramlow is the half sister of the decedent, Charlene Young. Ms. Gramlow was named as the sole beneficiary of a life insurance policy owned by Ms. Young. In June 1998, Ms. Gramlow prepared three documents from a computer program she had obtained: (1) Ms. Young's will, (2) Attachment 1, and (3) the Young Family Living Trust. Although Ms. Gramlow was the named executor of Ms. Young's estate and trustee of the Young Family Living Trust, she was later removed from her duties by the court. Mr. Woodard was appointed by the court to be the PR of the estate, replacing Ms. Gramlow.

In an attempt to resolve issues pertaining to Ms. Young's estate, Mr. Woodard filed a petition asking the court to

determine the rights of the parties. Specifically, Mr. Woodard asked the court to determine whether the document entitled Attachment 1 was a separate part of Ms. Young's will or whether it was intended to be effectively incorporated as a part of the will. Mr. Woodard also requested the court determine whether or not Ms. Gramlow was a successor trustee of the Young Family Living Trust.

A summary judgment hearing was noted. It took place in February 2003 in the Pend Oreille County Superior Court. At its conclusion, the court determined that Attachment 1 was intended by Ms. Young to be a part of her will. It also determined Attachment 1 created a testamentary trust. The res of the trust was found to be comprised of the proceeds of the insurance policy, which made them subject to the administration and control of Ms. Young's estate. A partial summary judgment order reflecting the above was filed in April 2003.

ANALYSIS

In this appeal, Ms. Gramlow contends the trial court erred when it determined that Ms. Young intended that Attachment 1 should be incorporated into her will as a testamentary trust. She also claims the court erred when it found the insurance proceeds were the res of the testamentary trust, which made them subject to the administration and control of the estate. We disagree.

■■■ An appellate court reviews de novo the trial court's interpretation of a will, including whether or not there is an ambiguity. *King v. Snohomish County*, 146 Wn.2d 420, 423-24, 47 P.3d 563 (2002). In construing a will, the court must ascertain the testator's intent from the four corners of the document. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). The entire will should be considered, and effect should be given to every part. *In re Estate of Price*, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994). A court may admit extrinsic evidence to explain the language of the will only if it finds the testator's intent is ambiguous. *Id.*

The terms of a will or trust instrument are ambiguous if they are susceptible to more than one meaning. *Waits v. Hamlin*, 55 Wn. App. 193, 200, 776 P.2d 1003 (1989).

■ ■ The will and Attachment 1 were drafted by Ms. Gramlow from a computer program. Although not exactly ambiguous, the inartful drafting of the will and Attachment 1 certainly led to confusion and dissension between the parties, which culminated in this appeal. We have taken into consideration the fact that Ms. Gramlow is not a trained legal advisor so the use of the word *executor*, a legal term of art, does not defeat the trial court's determination that Attachment 1 created a testamentary trust that was incorporated into Ms. Young's will. RCW 11.12.250, .255.[1]

■ ■ Attachment 1 is entitled "Instructions to my executor: Jacqueline B. Gramlow."[2] Ms. Young clearly intended for Attachment 1 to be part of her Last Will and Testament as evidenced by her handwritten notation on page 2 (the witness signature page), which states: "4 pages including Attachment."[3] Contrary to Ms. Gramlow's contention, neither RCW 11.12.255 nor *Baarslag v. Hawkins*, 12 Wn. App. 756, 531 P.2d 1283 (1975) requires that incorporation language be contained in the *body* of a will. The language adopted by the court in *Baarslag* requires only that the testator's intent to incorporate a document into a will must " 'clearly appear from the will' " and " 'must clearly and definitely describe or identify the documents intended to be incorporated, or render them capable of identification by extrinsic evidence, so that no room for doubt can exist as to what papers were meant.' " *Id*. at 763 (quoting 94 C.J.S. *Wills* § 163, at 954-56 (1956)). That rule is satisfied under the facts of this case.

---

[1] "[The] will may incorporate by reference any writing in existence when the will is executed if the will itself manifests the testator's intent to incorporate the writing and describes the writing sufficiently to permit its identification. In the case of any inconsistency between the writing and the will, the will controls."

[2] Clerk's Papers (CP) at 42.

[3] CP at 39; *see also* RCW 11.12.230.

We agree with the trial court's reliance on the rationale set forth in *In re Estate of Milton*, 48 Wn.2d 389, 294 P.2d 412 (1956), as the facts are similar to the case before us. A few weeks before he died, Mr. Milton designated his friend, Clifford Minkler, as the beneficiary of a life insurance policy. Apparently around the same time, Mr. Minkler was made the residuary legatee of Mr. Milton's estate through his will. The will stated that Mr. Milton contemplated the expenses of his last illness, funeral expenses, and costs of administration and other debts of the estate would be paid out of the proceeds of the insurance policy. However, Mr. Milton neglected to notify Mr. Minkler about the insurance policy or the will. *Id.* at 390-91. As such, when Mr. Milton died, Mr. Minkler was surprised to receive the insurance proceeds. *Id.* at 391. Nevertheless, he refused to assume any responsibility for the obligations of Mr. Milton's estate or to give the insurance proceeds to the estate's executors. *Id.* The trial court ordered Mr. Minkler to give the insurance proceeds to the estate's executors and Mr. Minkler appealed. *Id.* at 392. Our Supreme Court reversed, finding first that proceeds of an insurance policy are exempt from the claims of creditors. RCW 48.18.410; *Milton*, 48 Wn.2d at 392. It then determined that the testator's intent to use exempt property, such as insurance proceeds, to pay the debts of the estate must appear in the will or testamentary trust "by clear and apt language." *Id.* Because Mr. Milton's will did not expressly direct the distribution of the insurance proceeds (it only *contemplated* the use of such) nor was a trust created for the purpose of paying the final expenses, the court found Mr. Minkler was not legally obligated to pay Mr. Milton's debts. *Id.* at 393-94.

The trial court's application of *Milton* to the facts of the Charlene Young matter was appropriate. Both cases involve the proceeds from an insurance policy, which carries with it the presumption of exemption from creditor's claims. Ms. Gramlow asks us to follow the holding of *Milton* since our Supreme Court ultimately decided no trust was created by

the terms of the will and the insurance beneficiary was allowed to keep the proceeds without having to pay the estate's bills. However, it is not the holding but the rules of law set forth in the *Milton* case that apply directly to the case before us. As stated above, Attachment 1 created a testamentary trust that was incorporated into Ms. Young's estate by the wording on page 2 of the will.[4] Attachment 1 specifically required the life insurance proceeds to pay "[a]ll just debts, funeral expenses and expenses of last illness."[5] It then stated, "[a]fter the above expenses are taken care [sic]. Take the rest of the proceeds and invest them in CD's."[6] Clearly, the insurance proceeds were the corpus of the testamentary trust. The rule from *Milton* allows exempt property, such as insurance proceeds, to pay the debts of the estate as long as the testator's intent to do so is clear in the language of the will or trust. *Id.* at 392. The trial court, following this rule of law, found the proceeds of Ms. Young's insurance policy were to be used for paying the final expenses of the estate. The remainder of the insurance proceeds, if any, was not discussed by the trial court and, as such, is beyond the scope of this appeal.

Affirmed. Mr. Woodard's request for an award of fees and costs is granted subject to compliance with RAP 18.1.

KURTZ and BROWN, JJ., concur.

Review denied at 153 Wn.2d 1029 (2005).

---

[4] Ms. Young apparently created the Young Family Living Trust at about the same time as she executed her will. That trust document stated that any property left in her estate was to pour over into the Living Trust, which made Mr. Young the trustee if she died first.

[5] CP at 42.

[6] *Id.*